# No. 20-72416

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————

**SEAVIEW TRADING, LLC,
AGK INVESTMENTS, LLC, TAX MATTERS PARTNER,**

Petitioner - Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,**

Respondent - Appellee.

———————

## ON APPEAL FROM THE DECISION
## OF THE UNITED STATES TAX COURT

———————

## APPELLEE'S PETITION FOR REHEARING *EN BANC*

———————

DAVID A. HUBBERT
 *Deputy Assistant Attorney General*

FRANCESCA UGOLINI          (202) 514-3361
ARTHUR T. CATTERALL        (202) 514-2937
ANTHONY T. SHEEHAN         (202) 514-4339
 *Attorneys*
 *Tax Division*
 *Department of Justice*
 *Post Office Box 502*
 *Washington, D.C. 20044*

19579136.3

-i-

## TABLE OF CONTENTS

**Page**

Table of contents..............................................................................i

Table of authorities ........................................................................ii

Glossary .........................................................................................iv

Statement under Fed. R. App. P. 35(b)(1) & Local Rule 35-1 ..................1

Statement of the case ......................................................................2

    A.    Seaview Trading and its 2001 return ............................2

    B.    The court proceedings......................................................5

Argument .......................................................................................9

    A.    The majority opinion is in serious tension with Supreme Court and circuit precedent and misconstrues long-standing regulations governing the filing of tax returns.................................................9

        1.    The majority erroneously found a nonexistent gap in the governing Treasury regulation ............................................................10

        2.    The majority's opinion is in serious tension with decisions of other circuits and with this Court's decision in *Boitano*..................................14

    B.    The majority opinion substantially affects a rule of national application in which there is an overriding need for uniformity .....................................19

Conclusion.....................................................................................22

Addendum ......................................................................................23

Certificate of compliance ...............................................................26

19579136.3

-ii-

# TABLE OF AUTHORITIES

**Cases:**          **Page(s)**

*Allnutt v. Commissioner*, 523 F.3d 406 (4th Cir. 2008)................15-16

*Badaracco v. Commissioner*, 464 U.S. 386 (1984) .........................6, 10

*Boulware v. United States*, 552 U.S. 421 (2008)................................21

*Coffey v. Commissioner*, 987 F.3d 808 (8th Cir. 2021),
    *cert. denied*, 142 S. Ct. 758 (2022) ...............................................15

*Commissioner v. Lane-Wells Co.*, 321 U.S. 219 (1944).....................11

*Lucas v. Pilliod Lumber Co.*, 281 U.S. 245 (1930)........................6, 10

*United States v. Boitano*, 796 F.3d 1160 (9th Cir. 2015)................14,
    17-19, 21

*United States v. Briggs*, 141 S. Ct. 467 (2020)..................................22

*W.H. Hill Co. v. Commissioner*,
    64 F.2d 506 (6th Cir. 1933) .....................................................15-17

*Winnett v. Commissioner*, 96 T.C. 802 (1991)....................................15

*Zeier v. United States*, 80 F.3d 1360 (9th Cir. 1996) .........................11

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):
    § 6031 ......................................................................................11
    § 6072 ......................................................................................19
    § 6091 ......................................................................................19
    § 6229 ....................................................................................3, 7
    § 6230 ...............................................................................7, 11-12
    § 6501 ....................................................................................2, 21
    § 6511 ......................................................................................21
    § 6531 ......................................................................................21
    § 6611 ......................................................................................21
    § 6651 ......................................................................................21
    § 7203 ......................................................................................21
    § 7206 ...............................................................................17-18, 21

Tax Equity and Fiscal Responsibility Act of 1982
    (TEFRA) (formerly codified at
    26 U.S.C. §§ 6221-6234) .............................................................2

19579136.3

-iii-

**Miscellaneous:**                                                               **Page(s)**

1A Sutherland Statutes and Statutory Construction
§ 21:14 (7th ed.) ............................................................... 12

Federal Rule of Appellate Procedure 35 ............................................. 1

Ninth Circuit Rule 35-1 ..................................................................... 1

Treas. Reg.
§ 1.6031(a)-1 (2001) .................................................. 5-7, 12-13, 19
§ 1.6072-1 ................................................................................. 19
§ 1.6091-2 ................................................................................. 19
§ 601.601 ................................................................................... 6

19579136.3

-iv-

# GLOSSARY

| | |
|---|---|
| ER | Excerpts of Record filed by Seaview (cited in accordance with this Court's rules) |
| FPAA | Notice of Final Partnership Administrative Adjustment |
| I.R.C. | Internal Revenue Code of 1986 (26 U.S.C., 2000 ed.) |
| Kotick | Robert A. Kotick (owner of 99.15% of Seaview through intermediate entities) |
| Seaview | Seaview Trading, LLC (Petitioner-Appellant) (the partnership whose tax items are at issue) |
| TEFRA | Tax Equity and Fiscal Responsibility Act of 1982 (formerly codified at 26 U.S.C. §§ 6221-6234) |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

19579136.3

## STATEMENT UNDER FED. R. APP. P. 35(b)(1) & LOCAL RULE 35-1

The Internal Revenue Code instructs the Treasury Secretary to prescribe by regulations the procedures for filing tax returns. The proper "filing" of a tax return is critical to determining when various limitations periods begin and when criminal consequences arise. This case presents the following question of exceptional importance: whether, as the panel majority held, a Treasury regulation designating the "place for filing" does not apply when a return is filed late, despite the plain and unqualified text of the regulation. In the majority's view, there are no rules that govern where to file a late return, so the majority resolved the case based on its perception of the ordinary meaning of the word "filed."

The majority's decision misreads the relevant regulation, upends settled law requiring strict compliance with return-filing requirements, and has the potential to wreak havoc for tax administration in the Ninth Circuit. As the dissent correctly recognized, the majority's holding is in serious tension with Supreme Court and circuit court precedent on a matter of "nationwide importance." (Op. 29.) Rehearing *en banc* is warranted.

19579136.3

-2-

## STATEMENT OF THE CASE

### A.    Seaview Trading and its 2001 return

Seaview Trading, LLC claimed a $35.5 million deduction on its 2001 return from an abusive tax shelter.  Seaview concedes that it is not entitled to this deduction on the merits (2-ER-20-22), but the panel majority held that the IRS's disallowance of the deduction came too late.

As a limited liability company, Seaview was subject to the "TEFRA" partnership audit procedures.  (Op. 7.)  Partnerships are pass-through entities that are not directly subject to federal income tax; rather, a partnership's items of income and deduction are "passed through" to its partners, who report those items on their returns.  The ultimate 99.15% partner of Seaview is Robert Kotick, who will reap that percentage of the windfall resulting from the $35.5 million deduction allowed under the panel majority's opinion.  (Op. 7.)

The IRS generally has three years after a taxpayer files a tax return to assess any tax due.  I.R.C. § 6501(a).  Under TEFRA, if the taxpayer's return contained partnership items, the period for assessing tax attributable to those items could not expire any earlier than three

19579136.3

-3-

years after the filing of the partnership's return (Form 1065) for that year. I.R.C. § 6229(a). The timely mailing of a Notice of Final Partnership Administrative Adjustment (FPAA) suspended the running of that period until the conclusion of any court proceedings, plus one year. I.R.C. § 6229(d). If the partnership never filed a return, any tax attributable to a partnership item for that year could be assessed at any time. I.R.C. § 6229(c)(3).

As mentioned, Seaview claimed a $35.5 million tax-shelter deduction on its 2001 return, and Kotick claimed his 99.15% share of that deduction on his 2001 return. (*See* 1-ER-7-8.) Seaview initially maintained that it had mailed its 2001 return to the IRS's Ogden, Utah Service Center (the proper place for filing) in 2002, but the IRS never received it. (Op. 7.) Throughout its dealings with the IRS, Seaview maintained it had timely mailed its return, but it abandoned that contention after this case reached the Tax Court. (1-ER-9.)

In July 2005, IRS Revenue Agent Jerry Johnson sent a letter to Seaview stating, "Our records indicate that we have not received [Seaview's] federal income tax return(s) for the period(s) listed above [2001]. I would like to meet with you to discuss the matter."

19579136.3

-4-

(2-ER-231.) Johnson attached an Information Document Request instructing Seaview to send retained copies of any 2001 return Seaview claimed to have filed, and any proof of mailing, to his office in Rapid City, South Dakota. (Op. 7-8; 2-ER-231-34.)

In September 2005, Seaview's CPA sent a fax to Johnson's South Dakota office with a cover sheet stating, "As we discussed, I have attached the 2001 tax return for Seaview Trading LLC as well as the certified mailing," purporting to show that the return was mailed in 2002.[1] (Op. 8; 2-ER-220.) The attachments included what Seaview later identified as a retained copy of its 2001 return. (2-ER-222-29.)

In July 2007, Seaview's counsel (Skadden Arps) sent a letter to IRS attorney Jack Forsberg at his St. Paul, Minnesota office stating, "Pursuant to our prior conversation, enclosed is a copy of the Seaview Trading, LLC's retained copy of its 2001 Form 1065." (Op. 9; 2-ER-44.) The enclosed Form 1065 was the same document faxed in 2005. (2-ER-45-52.)

---

[1] Seaview alleged that it had mailed its 2001 return in the same envelope with the 2001 return of another Kotick-related entity. (2-ER-79-80.)

-5-

Neither submission requested that the attached copy of the Form 1065 be processed for filing or implied that it should be, because Seaview maintained that its original return had been timely mailed. Neither the 2005 nor the 2007 attachment was forwarded to the Ogden Service Center, the place designated under Treasury regulations for filing Seaview's return. (1-ER-13.) In October 2010, the IRS issued an FPAA with respect to Seaview's 2001 tax year, disallowing the $35.5 million deduction arising from the abusive tax shelter. (Op. 9.)

## B. The court proceedings

Seaview (through a partner) challenged the FPAA in the Tax Court. (Op. 9.) In its motion for summary judgment, Seaview did not allege that it had timely mailed its 2001 return. (1-ER-9 n.7.) It instead argued that the copies provided to the IRS in 2005 and 2007 were "filings" that triggered the limitations period on assessment, causing the FPAA, issued in 2010, to be time-barred. (1-ER-11-12.)

The Commissioner maintained that neither submission counted as a "filing" because Seaview did not send the return to the "place for filing" designated in Treas. Reg. § 1.6031(a)-1 (26 C.F.R.) (2001), which

-6-

governed the filing of partnership returns.  (1-ER-11-12.)  As relevant here, the regulation stated:

> **(e) Procedural requirements—**
>
> **(1) Place for filing.** The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).[2]
>
>      *     *     *

The Tax Court rejected Seaview's argument.  (1-ER-5.)  The court recognized Supreme Court precedent holding that taxpayers must meticulously comply with filing requirements to benefit from the limitations period.  (1-ER-12 (*citing Lucas v. Pilliod Lumber Co.,* 281 U.S. 245 (1930); *see also Badaracco v. Commissioner*, 464 U.S. 386 (1984) (limitations period on tax assessments strictly construed in favor of the government).)  Thus, the court explained, to start the limitations period, Seaview had to meticulously comply with all filing requirements, including filing its return at the designated place (*i.e.,* the Ogden Service Center).  (1-ER-12-13.)  The court noted that neither the revenue agent's office nor the IRS attorney's office was a proper

---

[2] Under the 2001 instructions, Seaview's filing location was the Ogden, Utah Service Center.

-7-

place for filing, and it pointed to a "plethora of caselaw holding that a revenue agent is not a designated filing place." (1-ER-13.)

In a 2-1 decision, this Court reversed. The majority (Circuit Judge Bumatay and District Judge Sessions III) held that Seaview filed its 2001 return in 2005 when it faxed a copy to Revenue Agent Johnson. (Op. 21.) The majority recognized that the Code does not define when a tax return is "filed," but instead provides that filing requirements are to be established by Treasury regulations. (Op. 11-12 (citing former I.R.C. § 6230(i)).) It further recognized that Treas. Reg. § 1.6031(a)-1(e) (Addendum, *infra*) contains separate subparagraphs establishing (1) the place for filing a partnership return, and (2) the time for filing the return. The majority nevertheless concluded that § 1.6031(a)-1(e) governs only the filing of *timely* returns and is "silent on filing procedures for late returns." (Op. 13.)

Because of that perceived silence, and because "no IRS regulation prohibits the filing of untimely returns with a requesting IRS official" (Op. 13), the majority considered the ordinary meaning of the word "filed" and held that "a delinquent partnership return is 'filed' under § 6229(a) when an IRS official authorized to obtain and process a

19579136.3

-8-

delinquent return asks a partnership for such a return,[3] the partnership delivers the return to the IRS official in the manner requested, and the IRS official receives the return" (Op. 15).

The majority then turned to the IRS's internal guidance regarding delinquent returns—albeit acknowledging that such guidance lacks the force of law and does not confer rights on taxpayers. (Op. 16-19.) That guidance instructs revenue agents and other IRS employees how to secure and process delinquent returns, including where to forward them for filing. (Op. 16-17.) In the majority's view, the guidance "show[s] that the IRS agrees that no regulation governs the process of 'filing' belated returns and that it too follows the term's ordinary meaning." (Op. 16.) The majority likewise found that a 2006 IRS Policy Statement "makes clear that members of the public may send their returns to an IRS 'representative' and trust that the return will be filed." (Op. 18.) And it dismissed caselaw requiring "meticulous compliance" with specified filing requirements as inapposite given its finding that those requirements do not apply in the context of delinquent returns. (Op. 19-20.)

---

[3] Here, the IRS sought retained copies, not a "delinquent" return.

19579136.3

-9-

Circuit Judge Bade dissented. Deeming the majority's holding "astonishing and unprecedented" (Op. 28), she stated that "in addition to being deeply implausible and contrary to law, the majority's analysis and conclusions are logically absurd and should not be the holding of this court." (Op. 29.) In her view, the majority's holding is "foreclosed by the plain text of the Tax Code and IRS regulations," "misapplies IRS internal guidance, misconstrues the record, and wrongly implies that the government may be equitably estopped from applying the Tax Code and regulations under these circumstances." (*Id*.) "Just as problematically," she stated, "the majority's holding defies long-standing, binding Supreme Court precedent, needlessly creates a circuit split, and disregards the Tax Court's expertise and authority on matters of nationwide importance." (*Id*.)

## ARGUMENT

**A.    The majority opinion is in serious tension with Supreme Court and circuit precedent and misconstrues long-standing regulations governing the filing of tax returns**

The dissent correctly focused on the straightforward proposition "that Seaview failed to file its return to the correct location, either on

19579136.3

-10-

time or belatedly.  That conclusion should end our inquiry, and we should affirm the Tax Court." (Op. 26.)  It concluded (Op. 77):

> The majority misconstrues the statutes and regulations, improperly fashions its own delinquent-return filing regime, is wrongly predicated on nonbinding internal IRS guidance, incorrectly applies a form of implicit equitable estoppel, misreads the record, and—contrary to basic rules of our jurisprudence—disregards Supreme Court, out-of-circuit, and Tax Court authority.

### 1. The majority erroneously found a nonexistent gap in the governing Treasury regulation

The dissent correctly pointed out that the majority's interpretive approach and conclusion were contrary to long-standing Supreme Court precedent holding that the limitations period on assessment is strictly construed in the government's favor, *see Badaracco*, 464 U.S. at 391-92, and that there must be "meticulous compliance by the taxpayer with all named conditions in order to secure the benefit of the limitation," *Lucas*, 281 U.S. at 249.  The Supreme Court has explained why meticulous compliance is critical:

> Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the taxpayer to comply.  It thus implements the system of self-assessment which is so largely the basis of our American scheme of income taxation.  The purpose is not alone to get tax information in some form but also to get it with such uniformity, completeness, and arrangement that

19579136.3

-11-

the physical task of handling and verifying returns may be readily accomplished.

*Commissioner v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944).

This Court has further recognized that "[p]articularly problematic are applications of equity that create an even greater inequity, namely, privileging the delinquent over the timely filer of a return." *Zeier v. United States*, 80 F.3d 1360, 1365 (9th Cir. 1996) (cleaned up). Because "[t]he Supreme Court has repeatedly held that we are bound by the technicalities of the tax system as defined by statute," this Court has refused "to privilege those who do not try to ascertain filing requirements over those who try to work within them." *Id.*

The dissent correctly recognized that the text of the governing Treasury regulation forecloses treating Seaview's 2005 and 2007 submissions as proper return filings. (Op. 30-44.) Section 6031 ("Return of Partnership Income") does not state a time or place for filing partnership returns. *See also* I.R.C. § 6230(i) (each TEFRA-related "furnishing of information" "shall be filed or made at such time, in such

19579136.3

-12-

manner, and at such place as may be prescribed in regulations").[4]

Instead, it is Treas. Reg. § 1.6031(a)-1(e) that lists the place-for-filing

and time-for-filing requirements in separate numbered subparagraphs.

*See* Addendum, *infra*.

The text of the place-for-filing provision is unqualified: "The

return of a partnership must be filed with the service center prescribed

in the relevant IRS revenue procedure, publication, form, or

instructions to the form." Treas. Reg. § 1.6031(a)-1(e)(1). Contrary to

the majority's conclusion, the text leaves no room to conclude that this

rule applies only to *timely* returns or that its application is conditioned

on compliance with the time-for-filing requirement set forth in the next

subparagraph of the regulation. *See* 1A Sutherland Statutes and

Statutory Construction § 21:14 (7th ed.) (when compliance with each

---

[4] The dissent stated that "the majority's theory that a taxpayer is excused from place or manner requirements by failing to adhere to time requirements is flatly foreclosed by the text of § 6230(i)":

> The statute is mandatory, and the place, time, and manner conditions are listed conjunctively, meaning each one is required. The Tax Code is not "silent" on whether a taxpayer is obliged to comply with the place *and* time requirements set forth in the regulations: it plainly requires compliance with both.

(Op. 33-34 (original emphasis).)

-13-

standard is desired, "and one standard is not intended to be a condition upon another, a mere itemization of standards"—*i.e.*, without the use of either the conjunctive or the disjunctive (neither of which is used in § 1.6031(a)-1(e))—"is the best practice").

The dissent properly treated the regulatory requirements as linked only in the sense that a partnership must obey all of them to properly file a return.  (Op. 36.)  The majority, however, found a nonexistent gap by holding that, because Seaview violated the subparagraph regarding the *time* for filing, the preceding subparagraph regarding the *place* for filing no longer applied.  (Op. 28.)  This, the dissent stated, effected "a sea change in the interpretation of long-standing, and previously uncontroversial, filing regulations."  (Op. 28.)  Under the required strict construction of the provisions affecting limitations periods, "it simply makes no sense to provide a different and more permissive tax filing regime for taxpayers who file their returns *late*."  (Op. 54 (original emphasis).)

The indefensibility of the majority's reading of § 1.6031(a)-1(e) is perhaps most evident from the dissent's analogy positing that a driver must obey the speed limit and stop at stop signs to be fully compliant

-14-

with the traffic law. (Op. 37-38.) As the dissent explains, speeding does not create a gap in the traffic laws enabling a speeder to ignore stop signs. In the same way, missing the deadline for filing a return does not create a gap in the filing requirements whereby delinquent returns need not reach the correct service center to be filed.

The majority unconvincingly contends that the dissent's hypothetical—but not the regulation at issue—involves "two *independent* commands." (Op. 15 n.2 (original emphasis).) The dissent's hypothetical traffic statute, however, is grammatically identical to the regulation. (*See* Op. 38 n.4). Likewise, the majority's interjection of obedience to the directions of a policeman—*i.e.,* someone explicitly authorized by statute to override traffic signs and signals— begs the question whether a taxpayer's fulfillment of a document request by an IRS employee conducting an audit overrides the statutes and regulations governing return filing.

> **2. The majority's opinion is in serious tension with decisions of other circuits and with this Court's decision in *Boitano***

The dissent extensively reviewed the case law, opining that the majority opinion also conflicts with precedent from other circuits that

19579136.3

-15-

have applied the meticulous-compliance standard. (Op. 61-77.) And the dissent catalogued a "plethora" of Tax Court cases "supporting the conclusion that Seaview did not file its return when it sent copies to an IRS agent and IRS counsel." (Op. 70.)

Before this decision, courts consistently held that for a return to be "filed," it had to be delivered to the specific IRS office or officer designated in the applicable statute and Treasury regulation. *See, e.g.*, *Allnutt v. Commissioner*, 523 F.3d 406, 412-13 (4th Cir. 2008); *W.H. Hill Co. v. Commissioner*, 64 F.2d 506, 507 (6th Cir. 1933); *Winnett v. Commissioner*, 96 T.C. 802 (1991); *accord Coffey v. Commissioner*, 987 F.3d 808 (8th Cir. 2021). No other court has identified the "gap" found by the majority here or held that a different rule should apply to late-filed returns. As the dissent observed, "[t]he majority does not cite a single case from our sister circuits supporting its position" (Op. 68)— because there is none.

The Fourth Circuit's decision in *Allnutt* is particularly instructive. There, Allnutt failed to file returns from 1981 through 1995 and sought to file them belatedly in 1997. 523 F.3d at 408. The Treasury regulation regarding "place for filing" allowed returns to be hand-

-16-

delivered "with the district director." *Id.* at 412. Allnutt instead hand-delivered his returns to the secretary of an IRS attorney and then dropped off a package of copies with an unidentified person in an IRS building housing the district director. *Id.* at 408-13. The package eventually made its way to the IRS Service Center, and the IRS issued a notice of deficiency within three years of that later date. *Id.* at 413-14. The Fourth Circuit rejected Allnutt's arguments that his earlier hand-deliveries accomplished a "filing," stating that "in order for returns to be considered 'filed' for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the *specific* individual or individuals identified in the Code or Regulations." *Id.* at 413 (original emphasis). Notably, the Fourth Circuit saw no basis to eschew the place-for-filing regulation merely because the filing was late.

Similarly, under the tax administration system at the time of *W.H. Hill Co.*, 64 F.2d at 507-08, returns had to be filed with the "collector" of internal revenue, not the Commissioner. Because revenue agents were in the office of the Commissioner, the Sixth Circuit held that the limitations period for assessment did not begin when income-

19579136.3

-17-

tax returns were delivered to revenue agents. *Id.* That was so even though the revenue agent there (unlike the IRS employees here) had indicated that he would attend to the filing of the returns. *Id.* at 507. As the Sixth Circuit stated, "there seems to us to be a radical difference between lodging a paper, designated a return, with the commissioner, and filing the same paper with the collector." *Id.* Lodging a return with the Commissioner did not constitute the meticulous compliance necessary to start the running of the statute. *Id.* at 508.

The panel's decision is also in substantial tension with the decision of this Court in *United States v. Boitano*, 796 F.3d 1160 (9th Cir. 2015). That case involved a taxpayer who was convicted of three felony counts of making false statements on his tax returns under I.R.C. § 7206(1). Boitano had not filed returns for over 15 years, and an IRS special agent requested to meet with him regarding this failure. At one of the meetings, Boitano handed past-due returns to the agent. The agent determined that the returns contained false statements and accordingly did not forward them for processing. *Id.* at 1161-62.

Boitano argued at trial that "filing" is an essential element of § 7206(1) and that his act of handing the returns to the agent did not

19579136.3

-18-

constitute "filing" under the statute and regulation applicable to individual returns. *Id.* at 1162. The government initially argued that these acts amounted to a filing, and the district court agreed. After Boitano was found guilty, he moved for an acquittal, renewing his argument that he had not filed anything. The district court again rejected that argument in denying the motion. *Id.*

On appeal, however, the government conceded that "there is a single definition of 'filing' that applies in both the civil and criminal context, and that the record does not support that the returns here were filed." *Id.* at 1163 (cleaned up). Accordingly, the government conceded that the agent's "testimony that the returns were 'filed' when Boitano handed them to him was incorrect." *Id.* The government argued instead that "filing" was not an essential element of a violation under I.R.C. § 7206(1). This Court rejected that argument, accepted the government's concession that the facts did not amount to a "filing," and reversed the conviction. *Id.* at 1164.

The operative facts here align with those in *Boitano*. Both Seaview and Boitano faced questions from the IRS regarding missing returns. After the return-filing deadline, Boitano provided returns for

19579136.3

-19-

filing, and Seaview provided what it identified as a retained copy of its

Form 1065, directly to the IRS agents asking the questions. In *Boitano,*

the government rightly conceded before this Court that a filing had not

occurred because Boitano did not file his late returns in accordance with

the governing statute and Treasury regulation. In reversing, this Court

implicitly agreed with the government and disagreed with the district

court, which had twice rejected Boitano's argument. But under the

panel majority's decision, giving a late return (or a copy) to an IRS

agent now amounts to a "filing" for both civil and criminal tax purposes.

B.   **The majority opinion substantially affects a rule of national application in which there is an overriding need for uniformity**

Although this case concerns a partnership return filed under a

repealed TEFRA statute, the panel majority's opinion has broader

implications, as the dissent correctly notes. (Op. 49.) The Internal

Revenue Code and Treasury regulations contain a host of provisions

governing the time (*e.g.*, I.R.C. § 6072, Treas. Reg. § 1.6072-1) and the

place (*e.g.*, I.R.C. § 6091, Treas. Reg. § 1.6091-2) for filing various

documents. Like Treas. Reg. § 1.6031(a)-1(e), the place-for-filing

provisions lack special rules for filing late documents, and they have

19579136.3

-20-

always been interpreted as applying to both timely and untimely filings. Under the majority's opinion, however, any silence regarding specific rules for late filings opens the door to arguments that there are "gaps" to be filled by reference to "ordinary meaning" principles.

As the dissent noted, "[l]ate-filed tax returns are far from an uncommon occurrence" (Op. 43-44, *see* Op. 79-83), and strict compliance with filing rules is necessary to put the IRS on notice that a return has been filed and the limitations period on assessment has begun. The majority, however, departed from strict compliance and opened the door to disputes over the authority of various offices and officers "to obtain and receive delinquent returns." (Op. 10.) As the dissent stated, "If the statute and regulations were truly silent on the correct procedures for filing delinquent returns, every year from April 16 on would be a tax-filing free-for-all." (Op. 44.) Thus, the majority created "a morass for courts to wade through" to determine whether an IRS employee was authorized to receive a return. (Op. 51.)

That morass would only be in this Circuit, undermining the equal and certain application of the nationwide tax system and creating uncertainty regarding critical limitations periods that are triggered by

-21-

filing. *See* I.R.C. § 6501 (limitations period on assessment of tax); I.R.C. § 6511 (limitations period for claiming a tax refund); I.R.C. § 6531 (limitations period on criminal prosecutions). That uncertainty also would extend to the computation of interest and penalties for late returns, which are likewise measured from the date of filing. *See* I.R.C. § 6651(a)(1) (penalty for late filing); I.R.C. § 6611(b)(3) (overpayment interest where return is filed late).

The majority's blurring of the line as to what constitutes the "filing" of a tax return also affects criminal prosecutions. *See Boulware v. United States*, 552 U.S. 421 (2008) (civil rules defining what constitutes a taxable dividend apply to criminal tax prosecutions). In articulating a rule it believed to be more fair to taxpayers, the majority expanded the range of conduct that can be charged in the Ninth Circuit under I.R.C. § 7206(1), which makes it a felony to "willfully make[ ] and subscribe[ ] any return" that is false as to a material matter. *See Boitano*, *supra*; *cf*. I.R.C. § 7203 (misdemeanor offense of willful failure to file a return). And, as in the civil context, the decision will make it more difficult to objectively determine when a return has been filed and the limitations period has commenced, resulting in more evidentiary

19579136.3

-22-

disputes as to timeliness. *Cf. United States v. Briggs*, 141 S. Ct. 467, 471 (2020) ("one principal benefit of statutes of limitations is that typically they provide clarity," both to the government and to defendants).

## CONCLUSION

The petition for rehearing *en banc* should be granted.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ *Anthony T. Sheehan*

| | |
|---|---|
| FRANCESCA UGOLINI | (202) 514-3361 |
| ARTHUR T. CATTERALL | (202) 514-2937 |
| ANTHONY T. SHEEHAN | (202) 514-4339 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

JULY 11, 2022

19579136.3

-23-

# ADDENDUM

Congress amended the partnership audit and litigation provisions of the I.R.C. in 2015, but the amendments apply only to partnership taxable years beginning after December 31, 2017.  Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 584, 625-38.  The following provisions are applicable to this petition.

**Excerpts from the TEFRA provisions (26 U.S.C. (2000)):**

§ 6229.  Period of limitations for making assessments .....................23
§ 6230.  Additional administrative provisions ..................................24

**Excerpts from the Treasury Regulations (26 C.F.R. (2001)):**

§ 1.6031(a)-1.  Return of partnership income ...................................25

## § 6229.  Period of limitations for making assessments

**(a) General rule.**—Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—

**(1)** the date on which the partnership return for such taxable year was filed, or

**(2)** the last day for filing such return for such year (determined without regard to extensions).

\*　　　　\*　　　　\*　　　　\*

19579136.3

-24-

**(c) Special rule in case of fraud, etc.—**

\*           \*           \*           \*

**(3) No return.**—In the case of a failure by a partnership to file a return for any taxable year, any tax attributable to a partnership item (or affected item) arising in such year may be assessed at any time.

\*           \*           \*           \*

**(d) Suspension when Secretary makes administrative adjustment.**—If notice of a final partnership administrative adjustment with respect to any taxable year is mailed to the tax matters partner, the running of the period specified in subsection (a) (as modified by other provisions of this section) shall be suspended—

**(1)** for the period during which an action may be brought under section 6226 (and, if a petition is filed under section 6226 with respect to such administrative adjustment, until the decision of the court becomes final), and

**(2)** for 1 year thereafter.

\*           \*           \*           \*

**§ 6230.  Additional administrative provisions**

\*           \*           \*           \*

**(i) Time and manner of filing statements, making elections, etc.**—Except as otherwise provided in this subchapter, each—

**(1)** statement,

**(2)** election,

**(3)** request, and

**(4)** furnishing of information,

-25-

shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations.

$$* \qquad * \qquad * \qquad *$$

**§ 1.6031(a)-1.  Return of partnership income.**

$$* \qquad * \qquad * \qquad *$$

**(e) Procedural requirements—(1) Place for filing.**  The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).

**(2) Time for filing.**  The return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership.

**(3) Magnetic media filing.**  For magnetic media filing requirements with respect to partnerships, see section 6011(e)(2) and the regulations thereunder.

$$* \qquad * \qquad * \qquad *$$

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 20-72416

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 4,190 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Anthony T. Sheehan | **Date** | Jul 11, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** | *Rev. 12/01/2021*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| SEAVIEW TRADING, LLC, AGK INVESTMENTS, LLC, TAX MATTERS PARTNER, *Petitioner-Appellant*, <br><br> v. <br><br> COMMISSIONER OF INTERNAL REVENUE, *Respondent-Appellee.* | No. 20-72416 <br><br> Tax Ct. No. 1837-11 <br><br><br> OPINION |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted October 18, 2021
San Francisco, California

Filed May 11, 2022

Before: Bridget S. Bade and Patrick J. Bumatay, Circuit
Judges, and William K. Sessions III,[*] District Judge.

Opinion by Judge Bumatay;
Dissent by Judge Bade

---

[*] The Honorable William K. Sessions III, United States District
Judge for the District of Vermont, sitting by designation.

2    SEAVIEW TRADING V. CIR

## SUMMARY[**]

**Tax**

The panel reversed the Tax Court's summary judgment in favor of the government, in a petition challenging a Final Partnership Administrative Adjustment and involving whether the three-year limitations period for adjustment of partnership losses under 26 U.S.C. § 6229(a) had begun to run, and remanded for further proceedings.

Taxpayer Seaview Trading, LLC, a California-based limited liability company, is classified as a partnership for federal tax purposes. Seaview believed it filed its 2001 partnership tax return (Form 1065) in July 2002, but the Internal Revenue Service has no record of receiving it. In 2005, in response to a letter from an IRS revenue agent notifying it that the IRS had not received its 2001 federal income return, Seaview faxed the agent a signed copy of Form 1065. The next month, the same IRS agent informed Seaview that its 2001 return had been selected for examination and requested further information, including all copies of the signed Form 1065. In 2006, during an interview of Seaview's accountant, the IRS noted that the accountant had previously provided a signed tax return and introduced Form 1065 as an exhibit. In 2007, Seaview's counsel mailed another signed copy of the 2001 Form 1065 to an IRS attorney.

In 2010, the IRS issued Seaview a Final Partnership Administrative Adjustment (FPAA) for 2001. In that notice,

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

SEAVIEW TRADING V. CIR                    3

the IRS stated that it had no record of a tax return filed by Seaview for 2001, but that the partnership had provided a copy of the return it claimed to have filed. The notice also indicated that none of the income/loss/expense amounts in the 2001 return were allowable. Seaview filed a petition in the Tax Court challenging the adjustment of losses.

The Tax Court held that Seaview did not "file" a tax return when it faxed a copy to the IRS agent or mailed a copy to the IRS counsel and, in any case, the copies of the 2001 Form 1065 sent to the IRS in 2005 and 2007 were not "returns." Seaview and the IRS then settled all their disputes but reserved Seaview's right to appeal the Tax Court's decision.

The panel first addressed whether the limitations period for adjustment of partnership losses under 26 U.S.C. § 6229(a) had begun to run. This issue turns on whether Seaview's tax return was ever "filed." The panel held that when (1) an IRS official authorized to obtain and receive delinquent tax returns informs a partnership that a tax return is missing and requests that tax return, (2) the partnership responds by giving the IRS official the tax return in the manner requested, and (3) the IRS official receives the tax return, then the partnership has "filed" a tax return for purposes of § 6229(a). Accordingly, the panel concluded that Seaview's 2001 tax return was filed when the IRS agent requested the missing return, Seaview delivered it, and the IRS acknowledged receipt during the auditing process in connection with the FPAA. Because the return was filed in 2005, the IRS's notice of FPAA in 2010 was untimely.

The panel next addressed whether Seaview's belated submission of its Form 1065 qualified as a "return." The panel applied the test under *Beard v. Commissioner*, 82 T.C.

4             SEAVIEW TRADING V. CIR

766, 777 (1984): (1) the document must purport to be a return, (2) it must be executed under penalty of perjury, (3) it must contain sufficient data to allow calculation of tax, and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law. Applying those factors, the panel concluded that the Form 1065 was a "return."

Dissenting, Judge Bade wrote that because it is undisputed that Seaview failed to file its return to the correct location in Ogden, Utah, in the manner prescribed in the applicable statute and regulations, either on time or belatedly, that conclusion should end the inquiry and the panel should affirm the Tax Court.

SEAVIEW TRADING V. CIR 5

**COUNSEL**

Lisa S. Blatt (argued), Sarah M. Harris, J. Matthew Rice, and Kimberly Broecker, Williams & Connolly LLP, Washington, D.C.; David W. Foster and Armando Gomez, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; for Petitioner-Appellant.

Anthony T. Sheehan (argued) and Arthur T. Catterall, Attorneys; David A. Hubbert, Acting Assistant Attorney General; Tax Division, United States Department of Justice, Washington, D.C.; for Respondent-Appellee.

Professor T. Keith Fogg, Director; Janice Rovner Feldman, Volunteer Attorney; Tax Clinic at the Legal Services Center of Harvard Law School, Jamaica Plain, Massachusetts; for Amici Curiae Center for Taxpayer Rights and Federal Tax Clinic at the Legal Services Center of Harvard Law School.

6                    SEAVIEW TRADING v. CIR

## OPINION

BUMATAY, Circuit Judge:

Imagine you get a letter from an Internal Revenue Service official saying that the IRS never received the tax return you thought you filed four years ago. In response, you fax a copy of your return to the IRS official. Two years go by, you then talk with an IRS lawyer, who again asks you for the same return. After that conversation, you send another copy of the return.

Three more years pass. You then get a notice that the IRS has decided to adjust your tax liability. The result: you owe the IRS a lot more money.

How can this be?—you ask. The IRS normally has only three years to adjust your taxes after you've filed your return. Not so fast, says the IRS. The two times you sent copies of the return to its officials didn't count. You never mailed a return to an IRS *service center*; so, the return was never "filed." And since you never "filed" a return, the IRS explains that it can still come after you at any time.

But that's not what the IRS has said elsewhere. The IRS has alerted taxpayers many times that they can properly "file" their returns by sending late returns to IRS officials who ask for them. In fact, the IRS has said doing so is the preferred way to send late returns.

That is exactly what happened here. Seaview Trading, LLC twice responded to inquiries from IRS officials about the whereabouts of its 2001 partnership tax return. And both times, Seaview promptly delivered the return to the officials. Rather than consider the return "filed," the IRS claims Seaview never filed a return. This logic defies the statutory

text, applicable regulations, IRS policies and practices, and common sense.  For those reasons, we reverse.

## I.

Seaview Trading, LLC, a California-based limited liability company, is classified as a partnership for federal tax purposes.  In 2001, Robert Kotick was Seaview's majority partner, owning over 99% of the company.  Robert's father, Charles, was the minority partner.  Seaview believed it filed its partnership tax return—also known as a Form 1065—for the 2001 tax year back in July 2002.  In its Form 1065 for 2001, Seaview reported a $35,459,542 loss from a tax-shelter transaction.  Seaview claims it mailed the return to the IRS service center in Ogden, Utah—the correct place to send timely returns.  But the IRS has no record of receiving such a filing.  Even though Seaview has produced a certified mail receipt for the return's mailing, it concedes that it cannot prove that the IRS received its 2001 return in 2002.

In March 2004, the IRS began auditing Robert Kotick's individual taxes for 2001 and 2002.  As part of that audit, Kotick provided the IRS an unsigned copy of Seaview's 2001 Form 1065.  The IRS did not audit Seaview as part of Kotick's review since partnerships require a separate audit.

In July 2005, an IRS revenue agent sent Seaview a letter notifying the partnership that the IRS had not received its 2001 federal income tax return.  Attached to that letter was a request to "[p]lease produce the following information and documents":

> 1. Did Seaview Trading file a Form 1065 (U.S. Return of Partnership Income) or other Federal Income tax return for its taxable year

2001? If so, what type of form did it file, what service center was the return filed with, and when was the return filed?

2. Provide copies of all retained copies of the return referred to in paragraph 1, above.

3. Provide copies of all receipts and other proof of mailing of the return referred to in paragraph 1, above.

In response, in September 2005, Seaview's accountant faxed the IRS revenue agent a signed copy of Seaview's 2001 Form 1065 return, along with the certified mail receipt purporting to show its delivery to the IRS. In the cover letter to the IRS revenue agent, Seaview's accountant stated: "As we discussed, I have attached the 2001 tax return for Seaview Trading LLC as well as the certified mailing."

A month later, the same IRS revenue agent informed Seaview that its 2001 return had been selected for examination and requested further information. Once again, the IRS letter requested "[a]ll retained copies of the signed 2001 Form 1065 Federal income tax return of Sea View [sic] Trading and any amendments thereto." The IRS also requested documents related to specific entries on Seaview's 2001 Form 1065.

As part of its examination, the IRS interviewed Seaview's accountant in January 2006. During the interview, the IRS noted that the accountant had "previously provided" Seaview's signed 2001 tax return and introduced the Form 1065 as an exhibit. In June 2007, the IRS also interviewed Robert Kotick. Again, the IRS acknowledged that it "obtained from [Seaview's accountant] a Form 1065

prepared for Seaview Trading, LLC, for its tax year 2001." The IRS also entered the Form 1065 as an exhibit for the interview. In July 2007, Seaview's counsel mailed another signed copy of the 2001 tax return to an IRS attorney "[p]ursuant to [their] prior conversation."

More than three years later, in October 2010, the IRS issued Seaview a Final Partnership Administrative Adjustment for the 2001 tax year. In that notice, the IRS stated that "[p]er Internal Revenue Service records, no tax return was filed by [Seaview] for 2001," but said, "[d]uring the examination," the partnership provided "a copy of a 2001 tax return which taxpayer claimed to have filed." The IRS then determined that "none of the income/loss/expense amounts reflected on the 2001 unfiled tax return provided by [Seaview was] allowable." It then informed Seaview that it would adjust its 2001 reported loss from over $35 million to zero dollars.

In March 2011, Seaview petitioned the Tax Court to challenge the adjustment of its partnership losses. Seaview moved for summary judgment asserting that the 2010 tax adjustment was time-barred under the three-year statute of limitations. *See* 26 U.S.C. § 6229(a) (2000), *repealed by* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584, 625, § 1101(a). The Tax Court disagreed. It held that (1) Seaview did not "file" the tax return by faxing a copy to the IRS revenue agent or by mailing a copy to the IRS counsel, and (2) in any case, the copies of the 2001 Form 1065 sent to the IRS in 2005 and 2007 were not "returns." Seaview and the IRS then settled all their disputes but preserved Seaview's right to appeal the Tax Court's denial of summary judgment.

Seaview now appeals. We review the Tax Court's resolution of a summary judgment motion and

10          SEAVIEW TRADING V. CIR

interpretations of the Tax Code de novo.  *Sollberger v. Comm'r*, 691 F.3d 1119, 1123 (9th Cir. 2012); *Meruelo v. Comm'r*, 691 F.3d 1108, 1114 (9th Cir. 2012).

**II.**

Seaview challenges the IRS's adjustment of its partnership losses, which it says came too late.  Seaview contends that a tax return is "filed" when it is delivered to and received by an IRS official who requests it.  So the limitations clock began, it argues, when Seaview delivered its return to an IRS revenue agent in September 2005.  If so, the three-year limitations period long expired by the time the IRS adjusted Seaview's losses in October 2010.  *See* 26 U.S.C. § 6229(a) (2000).  The IRS, on the other hand, insists that Seaview never filed its 2001 tax return and so the statute of limitations never started running.  *See id.* § 6229(c)(3).

So the question in this case: What counts as a tax return "filing" for statute of limitations purposes under the Tax Code?  We hold that when (1) an IRS official authorized to obtain and receive delinquent returns informs a partnership that a tax return is missing and requests that tax return, (2) the partnership responds by giving the IRS official the tax return in the manner requested, and (3) the IRS official receives the tax return, the partnership has "filed" a tax return for § 6229(a) purposes.

**A.**

A partnership must file a return of partnership income every year.  26 U.S.C. § 6031.  The Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, §§ 401–407, 96 Stat. 324, 648–71, established special audit and litigation procedures for certain partnerships.  *See*

26 U.S.C. §§ 6221–6234 (2000); *see also Seaview Trading, LLC v. Comm'r*, 858 F.3d 1281, 1284 (9th Cir. 2017).[1] For partnerships subject to TEFRA, the IRS has three years to adjust a partnership's income:

> [T]he period for assessing any tax imposed . . . for a partnership taxable year shall not expire before the date which is 3 years after the later of—
>
> > (1) the date on which the partnership return for such taxable year was filed, or
> >
> > (2) the last day for filing such return for such year[.]

26 U.S.C. § 6229(a) (2000). But if a taxpayer never files a return, the clock never begins to run. Instead, "in the case of a failure by a partnership to file a return for any taxable year, any tax attributable to a partnership item . . . may be assessed at any time." *Id.* § 6229(c)(3). So whether an IRS's tax assessment is timely depends on when a partnership's tax return is "filed."

Yet the Tax Code doesn't define when a tax return is "filed." *See Coffey v. Comm'r*, 987 F.3d 808, 812 (8th Cir. 2021) ("The Internal Revenue Code and the IRS regulations do not define the terms 'file' or 'filed.'"). Rather, the Tax

---

[1] The Bipartisan Budget Act of 2015 repealed TEFRA's partnership procedures. *See* Pub. L. No. 114-74, 129 Stat. 584, 625, § 1101(a). But those amendments generally became effective for "partnership taxable years beginning after December 31, 2017." *Id.* at 638; *see also 15 W. 17th St. LLC v. Comm'r*, 147 T.C. 557, 580 (2016).

12                    SEAVIEW TRADING V. CIR

Code states that each partnership return "shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations."  26 U.S.C. § 6230(i) (2000).

IRS regulations, in turn, specify the time, manner, and place of filing partnership returns:

(e)  **Procedural requirements**—

(1) **Place for filing**. The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form (see § 601.601(d)(2)).

(2) **Time for filing**. The return of a partnership must be filed on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership.

(3) **Magnetic media filing.** For magnetic media filing requirements with respect to partnerships, see section 6011(e)(2) and the regulations thereunder.

26 C.F.R. § 1.6031(a)-1(e) (2001); *see also id.* § 1.6091-1(b) (2001) (cross-referencing § 1.6031(a)-1(e)(1) for the "place for filing returns of partnership income").  The regulations also establish the "consequences" for failing to file a partnership return.  *Id.*  § 1.6031(a)-1(a)(4) (cross-referencing the penalties of 26 U.S.C. §§ 6229(a), 6231(f), 6698, and 7203).  The Tax Code penalizes the failure to file

a return "at the time" prescribed, but doesn't specify any penalty for filing a return at the wrong place. *See* 26 U.S.C. §§ 6698(a)(1), 7203.

So the IRS regulations expressly govern the time and place to file timely partnership returns. They must be filed by April 15 following the tax year and, for partnerships with a principal place of business in California, sent to the IRS Service Center in Ogden, Utah. *See* Form 1065, Instructions. If Seaview was seeking to show a *timely* filing of its partnership return, it could not do so. That's because Seaview concedes that it can't prove its Form 1065 was ever received by the service center in Ogden. But that's not the question before us. The question is whether Seaview *belatedly* "filed" its tax return by following the instructions of IRS officials and delivering the returns to them. On this front, the regulations do not appear to govern.

Section 1.6031(a)-1(e) doesn't expressly establish how taxpayers are to file delinquent returns. Nothing in the text says that the time and place requirements apply to untimely returns. Indeed, by definition, if a taxpayer files a return after April 15, the taxpayer can't comply with § 1.6031(a)-1(e) since the regulation specifies that date as when the return "must be filed." 26 C.F.R. § 1.6031(a)-1(e)(2). So, at most, the regulation is silent on filing procedures for late returns.

And no IRS regulation prohibits the filing of untimely returns with a requesting IRS official. As the IRS itself noted, there is more than one place for a partnership to properly file a return. For example, the law permits partnerships to hand-carry returns to certain IRS offices. *See* 26 U.S.C. § 6091(b)(4) (2000) (allowing filing by hand-carrying to an appropriate internal revenue district); 26 C.F.R. § 1.6091-2(d)(1) (allowing filing by hand-

14                    SEAVIEW TRADING V. CIR

carrying to "any person assigned the responsibility to receive hand-carried returns in the local Internal Revenue Service office"). So an IRS service center isn't the only place a partnership can file its returns—even when timely.

Because the Tax Code and the regulations do not define when a delinquent return is "filed," we turn to the ordinary meaning of the term. *See Lang v. Comm'r,* 289 U.S. 109, 111 (1933) ("Giving the words of the [Tax Code] their natural and ordinary meaning, . . . must be done[.]"); *see also Comm'r v. Brown*, 380 U.S. 563, 571 (1965) ("Generally speaking, the language in the Revenue Act, just as in any statute, is to be given its ordinary meaning[.]" (simplified)). The Supreme Court confronted the ordinary meaning of "file" in another federal statute back in 1916:

> The word 'file' was not defined by Congress. No definition having been given, the etymology of the word must be considered and ordinary meaning applied. The word 'file' is derived from the Latin word 'filum,' and relates to the ancient practice of placing papers on a thread or wire for safe-keeping and ready reference. Filing, it must be observed, is not complete until the document is delivered and received. . . . A paper is filed when it is delivered to the proper official and by him received and filed.

*United States v. Lombardo*, 241 U.S. 73, 76 (1916); *see Hotel Equities Corp. v. Comm'r*, 65 T.C. 528, 531 (1975) (applying *Lombardo*'s definition to the Tax Code). This definition tracks modern dictionary definitions. For example, to "file" means "[t]o deliver an instrument . . . to the proper officer . . . for the purpose of being kept on file by

him as a matter of record and reference in the proper place," *File*, *Black's Law Dictionary* (5th ed. 1979), or "to place in a file" or "to place on record, file an application," *File*, *Oxford American Dictionary* (1980).

Our court has held that "a return is 'filed' at the time it is delivered to the IRS." *United States v. Hanson*, 2 F.3d 942, 946 (9th Cir. 1993). In that case, we considered the meaning of a "filing" for a fraudulent tax return charge under 26 U.S.C. § 7206. We concluded that a "filing" was accomplished when the taxpayer personally "mailed the forms" and the "IRS received them." *Id.* We held it irrelevant that the IRS "never fully processed" the return. *Id.* So, in the ordinary sense, a tax return is "filed" if delivered to a proper IRS official and the official received the return. *Accord Heard v. Comm'r*, 269 F.2d 911, 913 (3d Cir. 1959) ("[U]nless otherwise defined by statute, filing does not occur until the paper to be filed is delivered to, received and filed by the proper official.").

Based on the ordinary meaning of "filing," we hold that a delinquent partnership return is "filed" under § 6229(a) when an IRS official authorized to obtain and process a delinquent return asks a partnership for such a return, the partnership delivers the return to the IRS official in the manner requested, and the IRS official receives the return.[2]

---

[2] The dissent posits a hypothetical traffic statute, which it claims undermines our plain-meaning interpretation of § 6229(a). Dissent 37–39. But the hypothetical only proves our point. The dissent's hypothetical statute, unlike § 1.6031(a)–1(e), contains two *independent* commands: (1) to stop at all STOP signs, and (2) to obey posted speed limits. *Id.* at 37. Violation of either command violates the law. But here, § 1.6031(a)–1(e) establishes two conditions necessary to comply with the filing command: the tax return must be (1) filed by April 15 and

**B.**

The IRS's own internal guidance verifies that delinquent returns need not be sent to an IRS service center and may be filed with authorized IRS officials.  And while internal guidance, such as the IRS Manual and IRS Policy Statements, don't have the force of law and don't confer rights on a taxpayer, *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006), they show that the IRS agrees that no regulation governs the process of "filing" belated returns and that it too follows the term's ordinary meaning.  In short, the IRS views the law one way as an internal matter and another way for litigation advantage.  We decline to follow this twisted logic.

Let's start with the IRS Manual.  The Manual outlines several steps that an IRS examiner must undertake when dealing with a delinquent tax return:

- First, the IRS Manual encourages its examiners to "[s]ecur[e] a valid voluntary tax return from the taxpayer."  Internal Revenue Manual 4.12.1.1.3 (2005).

---

(2) sent to the IRS service center.  Under a straightforward reading of § 1.6031(a)–1(e), the only way to comply with its command is to satisfy *both* conditions.  It is thus silent on what happens when only one condition—here, the filing deadline—cannot be met.  Indeed, even under the dissent's hypothetical, what is a driver supposed to do if a police officer directs the driver to blow through a STOP sign?  Can the driver be cited for complying with the police officer's command rather than stopping at the STOP sign?  That's closer to the scenario here—the IRS directed Seaview to submit its partnership return directly to the agent and Seaview complied.  But the IRS still argues that Seaview never complied with filing the return.

- Second, the Manual instructs IRS staff to "[a]dvise the taxpayer of the requirement to *file* all delinquent returns" and "[a]dvise the taxpayer to deliver the returns promptly *to the examiner*" along with an explanation for the reason for the delay in filing. *Id.* § 4.12.1.4.2 (emphases added).

- Third, once obtained, the IRS examiner is instructed to make a copy of the delinquent return and write on the copy: "PROCESS THE COPY AS AN ORIGINAL." *Id.* § 4.4.9.5.8.

- Fourth, the examiner must immediately forward the copy of the return to the Case Processing Support unit "no later than the day after the return [wa]s received," *id.* § 4.4.9.5.14.

- Finally, the Case Processing Support unit must send the return "to the appropriate campus," i.e., the appropriate IRS service center, for processing. *Id.* § 4.4.9.7.3.

In short, the IRS Manual requires IRS officials to request, obtain, and accept delinquent returns from the taxpayer and then process them. Contrary to the IRS's position here, the IRS Manual does not take the view that a delinquent return must be sent to a service center to be considered "filed."

An IRS Policy Statement also confirms that delinquent returns need not be filed at an IRS service center. Rather, in a 2006 Policy Statement, the IRS publicly represented that it

18                    SEAVIEW TRADING V. CIR

will "accept[]" all delinquent returns received from taxpayers—no matter how the IRS receives the return. IRS Policy Statement 5-133 (2006). The IRS expressly stated that "[a]ll delinquent returns submitted by a taxpayer, whether upon his/her own initiative or at the request of a Service representative, will be accepted." *Id.* This statement thus makes clear that members of the public may send their returns to an IRS "representative" and trust that the return will be filed. *Id.*

If there was any lingering doubt about the IRS's internal views on the filing of delinquent returns, an IRS Office of Chief Counsel advice memorandum puts that to rest. In the memorandum, the IRS considered whether "a revenue officer can require a taxpayer to file delinquent returns directly with the revenue officer rather than mailing the returns to the appropriate Service Center." IRS Office of Chief Counsel, Chief Counsel Advice No. 199933039, *Filing Delinquent Returns Directly With Revenue Officers* (Aug. 20, 1999), at 1.[3] This memorandum was prompted by a local practitioner challenging the "frequent[]" practice of IRS revenue officers demanding taxpayers file delinquent returns with them, rather than mailing the returns to an IRS service center. *Id.* at 2. The IRS first observed that neither the Tax Code nor regulations "make any reference to delinquent returns." *Id.* at 3 n.1. But after surveying the applicable law, the IRS concluded that "revenue officers in the performance of their assigned duties can request that taxpayers *file* their delinquent returns with the revenue officer instead of mailing the delinquent return to the applicable Service Center." *Id.* at 4 (emphasis added).

---

[3] While this Chief Counsel Advice didn't directly analyze the filing of delinquent *partnership* returns, the IRS hasn't provided any reason to apply a different analysis to such returns.

What's more, the memorandum expressed a preference for delinquent returns being filed with IRS officers. Given the costs and delays with sending a return to a service center, the Chief Counsel advised that "it is generally in the taxpayer's best interest[] to *file* the delinquent return directly with the revenue officer instead of mailing it to the appropriate Service Center." *Id.* (emphasis added); *see also id.* at 4 n.2. So even the IRS Chief Counsel recognizes that taxpayers can and *should* file a late return directly with the revenue officer rather than send it to a service center.

The IRS doesn't deny that its internal procedures conflict with its current litigation position, but only claims that its internal "procedures are primarily for the benefit of the IRS, not taxpayers." That may be so, but the point is *not* whether these internal documents benefit taxpayers. The point is that the IRS's own directives confirm the plain language of the Tax Code and IRS regulations—that taxpayers may file delinquent returns with authorized officials. And the inconsistency of the IRS's position is troubling: The IRS wants the ability to direct taxpayers to submit delinquent returns to its authorized officials, while maintaining the power to unilaterally decide whether the returns are "filed" for statute-of-limitations purposes. We reject this nonsensical position and instead follow the ordinary meaning of the Tax Code.

## C.

The IRS and dissent insist that delinquent returns delivered to IRS officials cannot be considered "filed" because of caselaw requiring "meticulous compliance by the taxpayer with all named conditions" to secure the benefit of the statute of limitations. *Lucas v. Pilliod Lumber*, 281 U.S. 245, 249 (1930). But such an argument only begs the question of what the "named conditions" are for filing

delinquent returns. As discussed above, the Tax Code and regulations are silent on the proper procedures for filing a delinquent tax return. Instead, it is the ordinary meaning of "filing" under § 6229(a) that governs delinquent returns. So when an authorized IRS official requests a missing return from a taxpayer, the taxpayer complies with the conditions of filing by delivering the return in the manner requested.

The IRS and dissent also cite several out-of-circuit cases holding that submitting a return to IRS personnel or to the wrong place doesn't constitute a "filing." But none of those cases involve the facts here—when an IRS revenue agent authorized to obtain delinquent returns requested and received the return from a taxpayer. *See, e.g.*, *Coffey*, 987 F.3d at 813–15 (no filing when taxpayer sent return to the Virgin Islands' Bureau of Internal Revenue); *Comm'r v. Estate of Sanders*, 834 F.3d 1269, 1278–79 (11th Cir. 2016) (same); *Allnutt v. Comm'r*, 523 F.3d 406, 408–13 (4th Cir. 2008) (no filing when taxpayer hand-delivered return to an unidentified man in the IRS District Director's office); *O'Bryan Bros. v. Comm'r*, 127 F.2d 645, 647 (6th Cir. 1942) (no filing when taxpayer gave return to revenue agent under old tax system—no longer in force today—that allowed only tax "collector" to receive returns); *W.H. Hill Co. v. Comm'r*, 64 F.2d 506, 507–08 (6th Cir. 1933) (same).

To be sure, several Tax Court cases support the IRS's view in this litigation. *See, e.g.*, *Friedmann v. Comm'r*, 82 T.C.M. (CCH) 381, 2001 WL 883222, at *6 (2001) (no filing when the taxpayer mailed the return to an auditing IRS agent because the "taxpayer [did not] meticulously comply with all conditions for application of the statute"). But we find more persuasive the Tax Court's analysis in *Dingman v. Commissioner*, 101 T.C.M. (CCH) 1562, 2011 WL 2150027 (2011). In *Dingman*, the Tax Court held that the hand-

delivery of returns to IRS Criminal Investigation Division special agents constituted "filing." *Id.* at *1. The court reasoned that (1) IRS could not prove that the special agents lacked authority to accept the returns; (2) the Commissioner has recognized revenue officers' authority to receive delinquent returns for filing; (3) the IRS Manual contemplated that the special agents could receive delinquent returns and instruct IRS employees on processing of delinquent returns; and (4) the return was ultimately processed by the IRS. *Id.* at *11–12. Such facts closely mirror this case.

### D.

We thus hold that's Seaview's Form 1065 for tax year 2001 was "filed" in September 2005 when the IRS revenue agent requested the missing return and Seaview later delivered it to the revenue agent.[4] And there's no question that the IRS received the return since it was acknowledged during the auditing process and used to issue the Final Partnership Administrative Adjustment. And because the 2001 return was "filed" by September 2005, the IRS's notice of adjustment in October 2010 was untimely. *See* 26 U.S.C. § 6229(a) (2000).[5]

---

[4] Since no party challenges the authority of the IRS revenue agent here to obtain Seaview's tax return, we need not decide which IRS officials fall into the category of officials who may obtain and process delinquent returns. But the IRS Office of Chief Counsel has held that revenue officers at the GS-9, GS-11, and GS-12 levels have authority to "secur[e] and process[] delinquent returns." IRS, Chief Counsel Advice No. 199933039 (Aug. 20, 1999), at 3.

[5] We don't reach whether the mailing of the return to IRS counsel in July 2007 also constituted a "filing" since the 2005 filing resolves the matter.

**III.**

One more question remains in this case. That's because the Tax Court also ruled that Seaview's belated submission of its Form 1065 didn't even qualify as a "return." In the Tax Court's view, Seaview didn't "intend" to send a "return" when it faxed the Form 1065 to the IRS revenue agent in 2005 because it included a copy of the certified mail receipt to show that the return had been previously filed in July 2002. We disagree.

While the Tax Code doesn't define "return," we use an objective inquiry—not the subjective intent of the filer—to assess whether a document is a return. *See Badaracco v. Comm'r*, 464 U.S. 386, 397 (1984).[6] We look at whether the documents "purported to be returns, were sworn to as such, and appeared on their faces to constitute endeavors to satisfy the law." *Id.* We also use the "widely-accepted" test of what

---

[6] The dissent contends that *Badaracco* also controls when a delinquent return is "filed" under § 6229(a) for statute-of-limitation purposes. Dissent 51–54. But a quick reading of the case shows that is not the case. As Justice Blackmun states right off the bat, "[t]he issue before [the Court was] the proper application of §§ 6501(a) and (c)(1) to the situation where a taxpayer files a false or fraudulent return but later files a nonfraudulent amended return." *Badaracco*, 464 U.S. at 388. Under § 6501(c)(1), the IRS may assess and collect taxes "at any time" if the taxpayer files a "fraudulent return." So the Court had to confront whether a nonfraudulent return submitted after a fraudulent one nullifies the limitless statute of limitations provided in § 6501(c)(1). The Court looked to the unambiguous text of the statute to hold that it does not. 464 U.S. at 392–93. But this straightforward interpretation of § 6501 doesn't bear on what counts as a delinquent "filing" under § 6229(a). Foreclosed by *Badaracco*'s actual holding, the dissent is left to argue that *Badaracco* requires us to "strictly construe[]" § 6229's statute of limitations "in favor of the government." Dissent 64. But even so, we don't think that means we must give the government carte blanche to apply § 6229 however and whenever it wants.

constitutes a "return" found in *Beard v. Commissioner*, 82 T.C. 766, 777 (1984). *In re Hatton*, 220 F.3d 1057, 1060 (9th Cir. 2000). Under *Beard*, (1) the document "must purport to be a return"; (2) "it must be executed under penalty of perjury"; (3) "it must contain sufficient data to allow calculation of tax"; and (4) "it must represent an honest and reasonable attempt to satisfy the requirements of the tax law." *Id.* at 1060–61 (simplified).

The first *Beard* factor is straightforward. The IRS revenue agent specifically asked for Seaview's 2001 "return" in July 2005 and received the faxed Form 1065 in response. By the context of this exchange, the Form 1065 faxed over by Seaview unambiguously purports to be a "return." *See Coffey v. Comm'r*, 150 T.C. 60, 84–89 (2018) (holding that whether a document constitutes a "return" takes "consideration of the context of a particular case"), *reversed on other grounds by Coffey*, 987 F.3d at 808. Indeed, the IRS treated the document as such. For example, in the notice adjusting Seaview's partnership losses, the IRS expressly described the Form 1065 as a "tax return," while maintaining that it was "unfiled." We also disagree with the Tax Court that providing the certified mail receipt with the Form 1065 showed that the document was not a "return." Instead, the mail receipt goes to Seaview's intent to "file" the Form (which we resolve above), not to whether the faxed Form 1065 purports to be a Form 1065.

Second, the Form 1065 was signed under penalty of perjury by Robert Kotick, Seaview's majority partner. The IRS disputes that because the faxed Form 1065 didn't bear an original signature. But the lack of a wet signature doesn't necessarily prevent a document from being a "return." *See Coffey*, 150 T.C. at 91–92 (holding that a scanned copy of the return counts as a return because nothing "in the Code or

regulations . . . explicitly calls for an 'original' signature"); *see also In re Harold*, 588 B.R. 484, 495 (Bankr. E.D. Mich. 2018) ("[A]s a matter of law, a copy of a signature rather than a wet-ink original signature [does not] necessarily invalidate[] the filing of a return."). Indeed, the IRS Office of Chief Counsel has interpreted the Tax Code's signature requirements under 26 U.S.C. §§ 6061 and 6065 to "be satisfied by a faxed copy of a taxpayer's manual signature if the taxpayer adopts the faxed copy as his or her signature for purposes of the return." IRS Office of Chief Counsel, Chief Counsel Advice No. 200137053, *Facsimile Signatures* (Sept. 14, 2001), at 3.[7] The IRS here confirmed that Kotick signed the faxed Form 1065 during his 2007 deposition.

Third, Seaview's faxed Form 1065 contained sufficient data for the IRS to calculate the tax liability. The submitted form showed comprehensive details of Seaview's income, assets, and deductions for 2001. The IRS then used the faxed Form 1065 to adjust Seaview's claimed loss of $35,496,542 down to zero. And the IRS made clear that its assessment came directly from the copy of the 2001 tax return received from Seaview.

Lastly, Seaview's faxed Form 1065 represented "an honest and reasonable attempt to satisfy the requirements of the tax law." *Hatton*, 220 F.3d at 1060–61. In assessing this factor, we look to the timing and context of the purported return's submission. *See In re Smith*, 828 F.3d 1094, 1097 (9th Cir. 2016) (holding that a tax filing was not "honest and reasonable" when created seven years after the return was due and three after the IRS already issued an assessment). In

---

[7] Once again, we look to IRS internal guidance not as granting taxpayers an enforceable right, but as confirming our interpretation of the law.

September 2005, less than two months after learning that the IRS had not received its 2001 tax return, Seaview faxed over the Form 1065 to the IRS revenue agent.  The IRS was then able to use the faxed Form 1065 to facilitate its audit and complete its assessment.  Under these circumstances, we have no trouble finding that the faxed Form 1065 was an honest and reasonable attempt at complying with the law.

Because the Form 1065 that Seaview faxed to the IRS in 2005 meets all the *Beard* criteria, we hold that the faxed Form 1065 was a "return."[8]

## IV.

The judgment of the Tax Court is reversed, and the case is remanded for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

BADE, Circuit Judge, dissenting:

The IRS generally has three years after the date a partnership tax return is filed to adjust that return and assess taxes.  26 U.S.C. § 6229(a) (2000).  However, when a tax return is not filed, this three-year statute of limitations does not run, and "any tax . . . arising in such year may be assessed at any time."  *Id.* § 6229(c)(3).  The issue here is whether Seaview Trading, LLC "filed" its 2001 partnership return when it shared what it described as a "retained copy" of the return with IRS officials in 2005 and 2007, as it now

---

[8] Since the September 2005 faxing of the Form 1065 constituted both a "return" and a "filing," we do not reach whether the July 2007 mailing of the Form 1065 also constituted a "return."

argues. If so, the IRS's adjustment of that return and assessment of taxes in 2010 were time-barred. If not, the IRS's rejection of Seaview's claimed $35 million loss from a tax shelter, and assessment of the resulting taxes, were not time-barred, and we must affirm the Tax Court's rejection of Seaview's claims.

For many years—indeed, in all its communications with the IRS and in litigating this case before the Tax Court— Seaview maintained that it had filed its 2001 partnership return in 2002, and that it had filed the return to the correct location, the IRS service center in Ogden, Utah.[1] *See* 26 C.F.R. § 1.6031(a)-1(e) (2001); IRS, Instructions for Form 1065 at 4 (2001). Now, Seaview acknowledges that it cannot show that its return ever reached the Ogden service center. It is therefore undisputed that Seaview failed to file its return to the correct location, either on time or belatedly. That conclusion should end our inquiry, and we should affirm the Tax Court.

Indeed, the majority concedes that Seaview was required to file its return with the Ogden service center in 2002, in the manner prescribed in the applicable statute and regulations. Maj. Op. 11–13. And the majority concedes that Seaview's 2001 partnership return never reached this location, the IRS never processed it as a filed return, and Seaview cannot show that it complied with the regulations. Maj. Op. 13. Therefore, under the plain text of the Tax Code and IRS regulations and the unanimous weight of applicable

---

[1] The Tax Code provides that returns "shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations." 26 U.S.C. § 6230(i) (2000). The regulations, in turn, set forth the specific place, time, and manner requirements for filing partnership returns. *See* 26 C.F.R. § 1.6031(a)-1(e) (2001).

precedent, the conclusion in this case is clear: Seaview never filed its 2001 partnership return, and the IRS was permitted to adjust Seaview's 2001 partnership return at any time. *See* 26 U.S.C. § 6229(c)(3) (2000); *id.* § 6230(i); 26 C.F.R. § 1.6031(a)-1(e) (2001).

The majority, however, goes to great lengths to avoid the result that the plain text of the Tax Code and the IRS regulations compel, taking issue with what it sees as the IRS's "inconsistency." Maj. Op. 6–7, 16, 19. The majority relies on IRS internal guidance documents to conclude that requiring Seaview to file its partnership return at the time and place designated in the regulations is unfair.[2] Maj. Op. 16–19.

In its attempt to remedy this perceived unfairness, the majority brushes aside all sources of binding and persuasive legal authority. For the majority, it matters little that the Tax Code and regulations specify the mandatory time and place for filing a tax return, 26 U.S.C. § 6230(i) (2000); 26 C.F.R. § 1.6031(a)-1 (2001), and that Seaview never complied with those provisions. Maj. Op. 10–15. And to reach its desired result, the majority disregards Supreme Court precedent holding that taxpayers must meticulously comply with filing requirements to benefit from the statute of limitations, *Lucas v. Pilliod Lumber Co.*, 281 U.S. 245, 249 (1930), and that we must strictly construe the statute of limitations in favor of the government, *Badaracco v. Comm'r*, 464 U.S. 386 (1984).

---

[2] To be sure, the majority avoids explicitly complaining that the Tax Code and regulations are "unfair." But the opening paragraphs of the opinion—in which the majority asks its readers to "imagine" that they, like Seaview, were mistreated when the IRS did not treat unfiled returns as properly filed returns, and laments "How can this be?"—expose the majority's underlying angst that the filing requirements are unfair. Maj. Op. 6–7.

Maj. Op. 19, 22 n.6. The majority also tramples the overwhelming body of case law from our sister circuits and the Tax Court rejecting the result it reaches. Maj. Op. 20–21.

How does the majority manage to sidestep so much binding and persuasive legal authority? In what can only be described as an astonishing and unprecedented holding, the majority decides that because Seaview violated some subsections of the applicable statute and regulation, the remaining provisions do not apply to it. Maj. Op. 13–15 & n.2. In other words, the majority reasons that the parts of the law governing *where* to file a partnership return do not apply in this case because Seaview did not comply with the parts of the law governing *when* to file a partnership return. Maj. Op. 13–15 & n.2.

Thus, the majority reads a massive gap into the regulations by concluding that 26 C.F.R. § 1.6031(a)-1(e) (2001)—the regulation setting forth the place, time, and manner requirements for filing partnership returns—*only* applies to timely returns. Maj. Op. 13. Under the majority's sweeping holding, as long as a taxpayer does not comply with the regulatory deadlines for filing a return (or in other words as long as the taxpayer submits a return *late*), the taxpayer is not subject to the regulation's other provisions and can "file" its return by sending it to virtually any IRS employee. Maj. Op. 10, 21 & n.4. The majority thus effects a sea change in the interpretation of long-standing, and previously uncontroversial, filing regulations.

The majority's analysis hinges in large part on IRS internal guidance documents, even though the majority concedes, as it must, that these documents lack the force of law and do not confer rights on taxpayers. *See e.g., Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006); Maj. Op. 16.

The majority errs by focusing on what is ultimately a red herring when it attempts to find support for its position in internal IRS guidance documents.

Moreover, the majority's conclusion—that the IRS failed to follow its internal guidance and therefore it is unfair to apply the Tax Code and regulations to conclude that Seaview failed to file its 2001 partnership return—impliedly applies estoppel to prevent the IRS from assessing taxes against Seaview for the 2001 tax year. But neither the majority nor Seaview has established any of the elements of estoppel. The majority's attempt to apply an implied form of estoppel cannot be countenanced.

As described in greater detail below, in addition to being deeply implausible and contrary to law, the majority's analysis and conclusions are logically absurd and should not be the holding of this court. As an initial matter, the majority's conclusions are foreclosed by the plain text of the Tax Code and IRS regulations. Undaunted, the majority fills the gap that it reads into the regulations by creating its own, and entirely novel, rule for filing delinquent returns. Maj. Op. 6–7. If this sort of judicial policymaking were not bad enough, the majority's holding also misapplies IRS internal guidance, misconstrues the record, and wrongly implies that the government may be equitably estopped from applying the Tax Code and regulations under these circumstances. *See* Maj. Op. 7–9, 16–21. Just as problematically, the majority's holding defies long-standing, binding Supreme Court precedent, needlessly creates a circuit split, and disregards the Tax Court's expertise and authority on matters of nationwide importance. I respectfully dissent.

30                    SEAVIEW TRADING V. CIR

**I.**

The majority attempts to avoid the obvious conclusion that Seaview failed to file its 2001 partnership return by applying a *sui generis* method of statutory and regulatory interpretation. It reasons that because the regulations state both the place and time for filing a partnership return, the regulations apply only to *timely* returns. Maj. Op. 13. Thus, *delinquent* returns—which is how the majority characterizes the copies Seaview sent to IRS employees in 2005 and 2007—are not subject to the regulations. Maj. Op. 13–15. After creating this atextual distinction, the majority is left with a regulatory gap of its own making: the correct filing procedures for delinquent returns. *See* Maj. Op. 13 –15. The majority takes the opportunity to fill this perceived gap, manufacturing (one might just as easily say legislating) out of whole cloth its own filing regime for delinquent returns. Maj. Op. 10, 15, 21.

But the notion that "the Tax Code and regulations are silent on the proper procedures for filing a delinquent tax return" is flatly contradicted by the Code and regulations and finds no support in *any* of the case law. Maj. Op. 20. And once this erroneous conclusion is removed from the majority opinion, the remainder of its reasoning cannot stand, as the majority tacitly concedes. Maj. Op. 13, 20.

**A.**

The validity of the IRS's 2010 adjustment turns on whether Seaview ever *filed* its 2001 partnership return. *See* 26 U.S.C. § 6229(a), (c)(3) (2000). Neither the Tax Code nor IRS regulations "define the terms 'file' or 'filed.'" *Coffey v. Comm'r*, 987 F.3d 808, 812 (8th Cir. 2021) (citing *Allnutt v. Comm'r*, 523 F.3d 406, 412 (4th Cir. 2008)), *cert. denied*, 142 S. Ct. 758 (2022). But, as the majority

acknowledges, Maj. Op. 20–21, "[c]ourts have long held . . . that in order for returns to be considered 'filed' for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the *specific* individual or individuals identified in the Code or Regulations." *Allnutt*, 523 F.3d at 412–13.

Here, the Code provides that returns "shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations." 26 U.S.C. § 6230(i) (2000). The regulations include § 1.6031(a)-1, which governs "[r]eturn[s] of partnership income." *See* 26 C.F.R. § 1.6031(a)-1 (2001). That section, in turn, includes a subsection, § 1.6031(a)-1(e), labeled "[p]rocedural requirements," which sets forth the specific place, time, and manner requirements for filing partnership returns. *Id.* § 1.6031(a)-1(e)(1)–(3). The place for filing is "the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form." *Id.* § 1.6031(a)-1(e)(1). The time for filing is "on or before the fifteenth day of the fourth month following the close of the taxable year of the partnership." *Id.* § 1.6031(a)-1(e)(2). As everyone agrees, the service center prescribed in this case was the IRS service center in Ogden, Utah. Maj. Op. 7, 13; *see* IRS, Instructions for Form 1065 at 4 (2001).

Applying this straightforward statutory and regulatory framework, informed by long-standing, binding precedent that a taxpayer must show "meticulous compliance . . . with all named conditions in order to secure the benefit" of the statute of limitations, *Lucas*, 281 U.S. at 249, the obvious conclusion, as the Tax Court found, is that because Seaview cannot show that it sent its return to the Ogden service center, it cannot show meticulous compliance with the

regulations, and therefore cannot invoke the statute of limitations.

The majority, seeking to avoid this result, Maj. Op. 19, takes a different approach. After recounting the relevant statutory and regulatory provisions, the majority summarizes what those provisions say with the following unsupported assertion: "So the IRS regulations expressly govern the time and place to file *timely* partnership returns." Maj. Op. 13 (emphasis added). This conclusion allows the majority to reason that the "time and place requirements" do not "apply to untimely returns," which in turn allows the majority to craft its own delinquent filing regulation based on "the ordinary meaning" of the term "file." Maj. Op. 10, 13–15.

As the majority admits, if its reading is incorrect, and instead the regulatory place and time filing requirements apply to Seaview, then Seaview's argument fails, and the IRS's 2010 adjustment was not barred by the statute of limitations. Maj. Op. 13, 19. Therefore, it is worth carefully considering whether the majority is correct that the regulations govern only "timely partnership returns" and are "silent on the proper procedures for filing a delinquent tax return." Maj. Op. 13, 20. And that careful consideration compels the conclusion that the majority is incorrect, and that its approach is deeply flawed.

**1.**

Perhaps the most patent flaw in the majority's conclusion is its inconsistency with the text of the Tax Code, § 6230(i). *See Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007) ("As always, we begin with the text of the statute."). Section 6230(i) states that a tax return "shall be filed or made at such time, in such manner, and at such place as may be prescribed in regulations." 26 U.S.C. § 6230(i) (2000).

Importantly, § 6230(i) uses the word "shall." *Id.* "Shall" ordinarily renders what follows it mandatory. *See Firebaugh Canal Co. v. United States*, 203 F.3d 568, 573–74 (9th Cir. 2000) ("The term 'shall' is usually regarded as making a provision mandatory, and the rules of statutory construction presume that the term is used in its ordinary sense unless there is clear evidence to the contrary."); Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 114 (2012) ("[W]hen the word *shall* can reasonably be read as mandatory, it ought to be so read."). Here, it is reasonable to read § 6230(i)'s use of "shall" as mandatory. Nothing in the text suggests it is optional for a taxpayer to disobey the regulations' place, time, or manner requirements. At a minimum, there is no "clear evidence" to suggest that § 6230(i) is not a mandatory provision. *Firebaugh Canal Co.*, 203 F.3d at 574. The majority certainly points to no such evidence.

In addition, § 6230(i) mandates compliance with all three conditions of place, time, and manner. Place, time, and manner are all linked by the word "and," which is a conjunctive word that, in this context, means that each condition is required. *See Confederated Tribes & Bands of Yakama Nation v. Yakima County*, 963 F.3d 982, 990 (9th Cir. 2020) ("The most common meaning of the word 'and' is as a conjunction expressing the idea that the two concepts are to be taken 'together.' Thus, when 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'" (citations omitted)).

Accordingly, the majority's theory that a taxpayer is excused from place or manner requirements by failing to adhere to time requirements is flatly foreclosed by the text of § 6230(i). The statute is mandatory, and the place, time, and manner conditions are listed conjunctively, meaning

each one is required.  The Tax Code is not "silent" on whether a taxpayer is obliged to comply with the place *and* time requirements set forth in the regulations: it plainly requires compliance with both.  *See* 26 U.S.C. § 6230(i) (2000); Maj. Op. 13.

**2.**

There is likewise no support for the majority's conclusion that the regulations themselves are "silent" about the need to comply with both time and place conditions, or that § 1.6031(a)-1(e) "expressly govern[s]" only the "time and place to file timely partnership returns."  Maj. Op. 13, 20.   Starting with the text,[3]  § 1.6031(a)-1(e) reads, in relevant part:

> (e) *Procedural requirements*—(1) *Place for filing.*  The return of a partnership must be filed with the service center prescribed in the relevant IRS revenue procedure, publication, form, or instructions to the form . . . .
>
> (2)    *Time for filing.*    The return of a partnership must be filed on or before the fifteenth day of the fourth month following

---

[3] We construe regulations using the same "toolkit" of interpretation as we do for statutes. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019); *see also id.* at 2446 (Gorsuch, J., concurring) ("When we interpret a regulation, we typically (at least when there is no agency say-so) proceed in the same way we would when interpreting any other written law:  We begin our interpretation of the regulation with its text and, if the text is unclear, we turn to other canons of interpretation and tie-breaking rules to resolve the ambiguity." (internal quotation marks omitted)).

> the close of the taxable year of the partnership.

26 C.F.R. § 1.6031(a)-1(e) (2001).   Reviewing these provisions, the majority concludes that they govern only "timely partnership returns." Maj. Op. 13.  But nothing in the regulatory text itself suggests it is limited to timely returns:  Both the time and place provisions explicitly apply to "[t]he return of a partnership."  26 C.F.R. § 1.6031(a)-1(e).   There is no text limiting the place requirement to timely returns, or to some other subset of partnership returns; the only natural reading of the regulation is that it applies to a "return of a partnership," regardless of whether the return is timely or delinquent.  Moreover, when the regulation is read with the mandatory and conjunctive requirements in the enabling statute, § 6230(i), it is plain that taxpayers must follow both the time and place requirements.

The majority's reading of § 1.6031(a)-1(e) is also perplexing in light of § 1.6031(a)-1(a)(4), which penalizes partnerships that file untimely returns.  *See id.* (citing 26 U.S.C. §§ 6698(a)(1), 7203 (2000)).   The majority's conclusion that untimely returns are not governed by the regulations, would, if true, mean that untimely returns are not subject to penalties.  This reasoning effectively reads § 1.6031(a)-1(a)(4) and 26 U.S.C. §§ 6698(a)(1), 7203 out of existence, creating the absurd result that only timely returns must comply with the requirement to timely submit returns, while untimely returns cannot be penalized for being untimely.  *See* Maj. Op. 13–15.  We disfavor interpretations that render statutes totally ineffectual or give rise to absurd results.  *See Ariz. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007–08 (9th Cir. 2006) (observing that "statutory interpretations which would produce absurd results are to be avoided" and that in interpreting a statute it

is for this court to "ascertain—neither to add nor subtract, neither to delete nor to distort" the text (internal quotation marks omitted)).

**3.**

Apart from being unsupported by any legal authority and starkly inconsistent with the statutory and regulatory text, the majority's reasoning in support of its theory is nonsensical.

As an initial matter, it makes no sense to treat the time requirements as unlinked to the place requirements. Under the majority's reasoning, one might just as easily conclude that § 1.6031(a)-1(e) governs only returns filed at the correct place, and that therefore returns submitted to other locations can be submitted on any timeline because, after all, the regulations are "silent" about the time requirements of returns submitted to the incorrect location. Maj. Op. 20. Such a reading, of course, would be absurd. The point of § 6230(i) and § 1.6031(a)-1(e), read together, is that to properly file a return, a partnership must file it at the prescribed location by the prescribed date. It would do taxpayers little good to have a deadline without knowing where to submit the return, or vice versa. The two provisions are linked, and, by the plain text of § 6230(i) and § 1.6031(a)-1(e), both place and time conditions are required.

Additionally, to support the proposition that "the regulations do not appear to govern" a belatedly-filed tax return, the majority observes that "[n]othing in the text says that the time and place requirements apply to untimely returns." Maj. Op. 13 That is true. But the regulation also does not say that it applies to timely returns. The regulation says when and where a partnership must file its returns.

26 U.S.C. § 6230(i) (2000); 26 C.F.R. § 1.6031(a)-1(e) (2001).  It does not separate timely and untimely returns into different categories.  And why would it?  The very notion of what an untimely return *is* derives entirely from the text of § 1.6031(a)-1(e).  In other words, a return is untimely only if it fails to comply with the timing requirements of the regulation.

The majority also reasons that "by definition, if a taxpayer files a return after April 15, the taxpayer can't comply with § 1.6031(a)-1(e) since the regulation specifies that date as when the return 'must be filed.'"  Maj. Op. 13. It is unclear what significance the majority places on this observation.  Of course, it is a tautology that when someone does not comply with the terms of a regulation, she "can't comply" with it because, well, she has not complied with it. Moreover, we do not construe statutes and regulations to apply only to those who comply with their provisions; indeed, the law applies most acutely to those who do not follow it.  Nor do we generally excuse compliance with one provision based on noncompliance with another.  And yet, the upshot of the majority's holding is that those who timely file their returns are subject to all the regulations, while those who do not are shielded from statutory and regulatory consequences.

To illustrate why the majority's approach cannot be correct, consider a hypothetical traffic statute.  Suppose that a jurisdiction enacted a statute that stated:

> When operating a motor vehicle, all drivers must:
>
> (1) Stop at signs marked "STOP."
>
> (2) Obey posted speed limits.

Now consider a driver in this hypothetical jurisdiction who, while driving 80 mph in a 30-mph zone, is pulled over for running a stop sign. Under the majority's reasoning, the driver could defend himself by arguing that the statute "is silent" about his conduct because it applies only to drivers obeying the speed limit. "*Speeding* drivers," the driver might argue, "do not appear to be governed" by the statute because a person can comply with the statute only by obeying the posted speed limit, and he has not done so. One would not expect such an argument to get very far with the traffic court. Yet the majority adopts this argument in the tax context.[4]

---

[4] The majority attempts to distinguish this hypothetical from § 1.6031(a)-1(e) by arguing that the hypothetical traffic statute "contains two *independent* commands," which, to the majority, means that "[v]iolation of either command violates the law," while § 1.6031(a)-1(e) "establishes two conditions necessary to comply with the filing command." Maj. Op. 15 n.2. The majority seems to overlook that the punctuation and structure used in the hypothetical traffic statute are precisely the same as that used in § 1.6031(a)-1(e), which also contains separate, independent time and place commands separated by periods and subsection headings. *See* 26 C.F.R. § 1.6031(a)-1(e). I agree with the majority's recognition that to satisfy § 1.6031(a)-1(e), a partnership must comply with both time and place provisions, Maj. Op. 15 n.2, which is why Seaview failed to file a return in this case, because it complied with neither. The same, of course, is true of the hypothetical traffic statute: to comply with the statute, a driver has to obey speed limits and stop at stop signs. Once again, the majority reasons that because Seaview did not obey the regulation, it is not subject to the regulation. Maj. Op. 15 n.2.

The majority also asks "what is a driver supposed to do if a police officer directs the driver to blow through a STOP sign? Can the driver be cited for complying with the police officer's command . . . ?" Maj. Op. 15 n.2. The hypothetical question of whether instruction from a police officer might be a defense to traffic liability is, of course, not

Simply put, delinquency under one provision of the regulation does not render another provision inapplicable. The effect of the majority's ruling is to *excuse* delinquent filers from the necessity of complying with the remainder of the regulations. Lawbreakers everywhere may rejoice when they learn that by not complying with one part of a statute or regulation, the rest of the statute or regulation is rendered "silent." The majority opinion is tellingly free of any citation supporting this *sui generis* interpretation of the Code and regulations.

**4.**

Similarly, the majority's conclusion that § 1.6031(a)-1(e)'s place, time, and manner filing requirements apply only to timely returns is flatly inconsistent with the rest of § 1.6031(a)-1's provisions, which clearly apply to both timely and delinquent partnership returns.

For example, § 1.6031(a)-1(a)(1) requires the filing of returns for domestic partnerships, stating that "every domestic partnership must file a return of partnership income under section 6031 (partnership return) for each taxable year on the form prescribed for the partnership return." 26 C.F.R. § 1.6031(a)-1(a)(1) (2001). But under the majority's conclusion that delinquent returns are ungoverned by the IRS regulations, only timely returns would need to be filed "for each taxable year on the form prescribed." *Id.* In other

---

before us. In any event, as discussed below, the IRS in this case did not "command" Seaview to file a tax return, but asked for copies as part of its investigation. There is no indication in the record that Seaview thought that in complying with this request it was filing a return; indeed, the record suggests the opposite. As noted, and discussed further below, the majority seems to covertly apply a form of equitable estoppel, which, if properly and openly applied, would fail on the facts of this case.

words, the implication of the majority's reasoning is that partnerships that file returns late need not file partnership returns at all. *See United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013) ("[S]tatutory interpretations which would produce absurd results are to be avoided." (alteration in original) (internal quotation marks omitted)).

Another subsection of the regulation, § 1.6031(a)-1(a)(2), prescribes the contents of a partnership return. *Id.* § 1.6031(a)-1(a)(2). But under the majority's interpretation, this regulation would only govern the contents of timely-filed returns. Presumably, for the majority, there are no regulations that prescribe the contents of a delinquent partnership return.

And, as previously noted, § 1.6031(a)-1(a)(4) provides that there are consequences for "[f]ailure to file" a return and cross references several statutory provisions. *Id.* § 1.6031(a)-1(a)(4) (citing 26 U.S.C. §§ 6229(a), 6231(f), 6698, 7203 (2000)). Under the majority's construction of the regulation, none of these consequences would apply to delinquent returns because the regulation applies only to timely returns. And yet these consequences self-evidently are meant to apply to returns that are not filed on time. Indeed, if the majority is correct that the regulations do not govern the filing of untimely returns, then some of these provisions would effectively be read out of the Tax Code. *See, e.g.*, 26 U.S.C. § 6231(f) (2000) (penalizing noncompliance with § 6031, which provides, among other things, that partnerships are required to furnish a return to certain partners "on or before the day on which the return for such taxable year was required to be filed," *see id.* § 6031(b)); *id.* § 6698(a) (penalizing a partnership that "fails to file [a] return at the time prescribed therefor"); *id.* § 7203

(penalizing willful failure to pay tax "at the time or times required by law or regulations").

The majority attempts to evade these problematic implications for the structure of the regulations by arguing that the Tax Code penalizes the failure to file a return at the wrong time "but doesn't specify any penalty for filing a return at the wrong place." Maj. Op. 12–13 (citing 26 U.S.C. §§ 6698(a)(1), 7203).  But even if § 6698 were read to only impose monetary penalties for failing to file a timely return, and if § 7203 were read to criminalize only the willful failure to file a timely return, the question of *where* the return must be timely filed would remain.  If a taxpayer mails a return to NASA or the United States Fish and Wildlife Service, the IRS need hardly impose a separate monetary or criminal penalty for filing in the wrong place.  And it would not make any difference if the taxpayer mailed a return to NASA or Fish and Wildlife by the regulatory deadline.  Instead, if the taxpayer submitted a return to the wrong location, and never submitted a return to the correct location, the IRS simply would not regard the return as having been filed.  It is a matter of common sense and an acquaintance with reality to recognize that when a statute penalizes failure to timely file, it encompasses failing to file at all by filing in the wrong place.

**5.**

The majority also attempts to bolster its position by pointing out that "no IRS regulation prohibits the filing of untimely returns with a requesting IRS official."  Maj. Op. 13.  But the regulation need not list the infinite number of *wrong* ways to file a return.  The regulations also do not prohibit the filing of a return by sending it in a letter personally addressed to the President of the United States. But I doubt we would have much sympathy for a taxpayer

42                    SEAVIEW TRADING V. CIR

who followed such a method and complained that the IRS did not treat his return as filed.

The regulations prescribe *when* and *where* a taxpayer *shall* file a return, and Congress has made compliance with those requirements *mandatory*. 26 U.S.C. § 6230(i) (2000); 26 C.F.R. § 1.6031(a)-1(e) (2001). By necessary negative implication, all other times and places of filing are not in compliance. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885 (9th Cir. 2005) ("The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." (internal quotation marks omitted)).

Similarly, the majority's contention that "there is more than one place for a partnership to properly file a return" hurts, rather than helps, its theory. Maj. Op. 13 (citing 26 U.S.C. § 6091(b)(4); 26 C.F.R. § 1.6091-2(d)(1)). The majority points to the regulation that provides the places for filing returns by various taxpayers, such as individuals, estates, trusts, and corporations. *See* 26 C.F.R. § 1.6091-2(a)–(b). Notably, that regulation also provides that "whenever instructions applicable to income tax returns provide that the returns be filed with a service center, the returns must be so filed in accordance with the instructions." *Id*. § 1.6091-2(c). The regulation provides that "persons other than corporations" and "corporations" may file returns by hand carrying them to the district director of the internal revenue district in which the taxpayer resides. *Id*. § 1.6091-2(d).

But even assuming Seaview could have hand-carried its return to an IRS office, instead of or in addition to mailing its return to the Ogden service center, *see* 26 U.S.C.

SEAVIEW TRADING V. CIR                43

§ 6091(b)(4); 26 C.F.R. § 1.6091–2(d)(1), Seaview nowhere argues that it did so or that it attempted to do so. And although the Tax Code and regulations enumerate specific locations and methods for filing a return, that does not suggest that an infinite set of other locations and methods (such as mailing a copy to an IRS agent) might be permissible; it suggests the opposite. *See Silvers*, 402 F.3d at 885; *see also* Scalia & Garner, *supra*, at 107–08 (noting that "the principle that specification of the one implies exclusion of the other validly describes how people express themselves and understand verbal expression" and that the "more specific the enumeration, the greater the force of" this principle). Congress has permitted the Secretary of the Treasury to create regulations providing for the place, time, and manner of filing tax returns, and made it *mandatory* for the taxpayer to comply with those regulations. By necessary negative implication, other places, times, and manners are improper.

**6.**

The final reason to doubt the majority's conclusion that the Tax Code and regulations are silent regarding delinquent returns is the sheer implausibility of that position. Late-filed tax returns are far from an uncommon occurrence.[5] It is

---

[5] As Seaview acknowledges, "[d]elinquent returns are commonplace." Statistics available on IRS's public website show that the IRS assesses billions of dollars per year from delinquent returns. *See* IRS, *SOI Tax Stats - Delinquent Collection Activities - IRS Data Book Table 25*, https://www.irs.gov/statistics/soi-tax-stats-delinquent-collection-activities-irs-data-book-table-25 (last visited May 2, 2022); *see also* Robert E. McKenzie, *7 Million Taxpayers Fail to File Their Income Taxes*, Forbes (Aug. 27, 2014, 2:37 AM), https://www.forbes.com/sites/irswatch/2014/08/27/7-million-taxpayers-fail-to-file-their-income-taxes/?sh=78c4921a706f.

therefore hard to believe that § 6230(i) or § 1.6031(a)-1(e) are not meant to apply to delinquent returns, and that Congress and the Secretary of the Treasury simply overlooked this all too common and predictable occurrence. If the statute and regulations were truly silent on the correct procedures for filing delinquent returns, every year from April 16 on would be a tax-filing free-for-all. Tellingly, the majority opinion is unique in reaching this conclusion.

\* \* \*

The majority's reading of § 6230(i) and § 1.6031(a)-1(e) is plainly incorrect. The remainder of the majority's reasoning is built on this foundation, as the majority admits, Maj. Op. 13, 20. so the majority opinion fails for this reason alone. Nonetheless, I address why the remainder of the majority's reasoning fails even if this foundational flaw is overlooked.

**B.**

**1.**

Once the majority determines that 26 C.F.R. § 1.6031(a)-1(e) does not govern untimely returns, it frees itself to supply its own requirements for filing delinquent partnership returns based on the "ordinary meaning" of the term "file." Maj. Op. 14–15. Like the faulty statutory and regulatory interpretation on which it is based, this conclusion is riddled with errors.

First, it bears repeating that there is simply no cause for this court to look to the ordinary meaning of the term "file" when, as set forth above, the statute and regulations already clearly set forth the filing requirements for partnership returns.

Second, even if there were some kind of legislative or regulatory gap in this area, it is not this (or any) court's role to supply an absent provision or create an exception not provided by Congress. "It is a fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020) (alteration in original) (internal quotation marks omitted); *see also* Scalia & Garner, *supra*, at 93 ("It is not [the judge's] function or within his power to enlarge or improve or change the law. Nor should the judge elaborate unprovided-for exceptions to a text . . . ." (footnote and internal quotation marks omitted)). The majority runs afoul of this fundamental principle by finding a regulatory gap of its own making and then filling it with a wholly invented, court-created exception to ordinary filing rules for delinquent partnership returns. Maj. Op. 10, 15, 21. Regardless of the merits of its new rule, the majority violates basic legal principles in creating it.

Third, the majority's new rule for delinquent returns contradicts the language from the very authorities it cites in defining the word "file." For example, in *United States v. Lombardo*, 241 U.S. 73 (1916), the Court held that a "paper is filed when it is delivered to the *proper official* and *by him received* and filed." 241 U.S. at 76 (emphases added). This is precisely the rule that Seaview has indisputably failed to satisfy. Its return was never delivered to, or received by, the proper official. Seaview sent copies of its return to an IRS revenue agent and IRS counsel, and—undisputedly—*not* to the Ogden service center. This means that the returns were not delivered to the "proper official" and were not "by [that official] received." *Lombardo*, 241 U.S. at 76; *see also, e.g.*, *Smyth v. Comm'r*, 113 T.C.M. (CCH) 1132, at *3 (2017) (delivery to IRS counsel is not a filing); *Friedmann v.*

*Comm'r*, 82 T.C.M. (CCH) 381, at *6–7 (2001) (delivery to a revenue agent is not a filing).

Other authorities relied upon by the majority similarly include as part of their definitions of "file" that the return must be "delivered to, received and filed by the *proper* official." *Heard v. Comm'r*, 269 F.2d 911, 913 (3d Cir. 1959) (emphasis added); *see also* Maj. Op. 14–15 (citing *File, Black's Law Dictionary* (5th ed. 1979) for proposition that to file is "[t]o deliver an instrument . . . to the proper officer" (alterations in original)). As explained later, the majority's attempt to sidestep this difficulty by redefining what counts as a proper official, *see* Maj. Op. 10–10, 21 n.4, is unpersuasive in light of the large body of case law rejecting revenue agents or IRS counsel as proper officials, among other reasons.

Similarly, the majority's reliance on *United States v. Hanson*, 2 F.3d 942 (9th Cir. 1993), does little to support its ordinary meaning definition. Maj. Op. 15 In *Hanson*, the defendant was criminally prosecuted for filing a false tax return under 26 U.S.C. § 7206(1). *Id.* at 944. The defendant argued on appeal that the allegedly false forms "were not 'filed' because they were never fully processed by the IRS." *Id.* at 946. We rejected this argument, observing that "Hanson personally mailed the forms and . . . the IRS received them." *Id.* We held that a "return is 'filed' at the time it is delivered to the IRS." *Id.*

At first blush, *Hanson*'s terse definition of "file" might appear to help the majority's argument. After all, Seaview "delivered" its return "to the IRS" when it sent copies of its returns in 2005 and 2007. *Id.* But in *Hanson*, the court was not asked to decide whether a return sent to the wrong location and not processed as a return was "filed." The defendant argued simply that because the IRS "never fully

processed" his returns, he did not file them and could not be criminally liable for filing a false return. *Id.* The court did not explain what was meant by "never fully processed," and, unlike here, the government did not argue that the returns were not sent to the correct location. *See id.* Indeed, the facts suggested that the defendant submitted his fraudulent returns to the correct location. *See id.* at 944–45. Thus, *Hanson* cannot reasonably be read to suggest that a taxpayer may properly file a return other than by sending it to the correct location.

Furthermore, given the criminal nature of the charge against the defendant in *Hanson*, whether the returns were processed was not particularly relevant, because the issue was whether the defendant "[w]illfully ma[de] and subscribe[d] any return . . . under the penalties of perjury . . . which he d[id] not believe to be true and correct as to every material matter." 26 U.S.C. § 7206(1) (1988). Unsurprisingly, in a criminal prosecution for such an offense, the emphasis was on the defendant's conduct and state of mind, rather than on whether the IRS "fully processed" his returns, and the court rejected the defendant's argument without extensive analysis. *See Hanson*, 2 F.3d at 946.[6]

---

[6] Subsequent interpretations of *Hanson* raise further doubts about the application of its definition of "file" to the facts of this appeal. *See United States v. Boitano*, 796 F.3d 1160, 1163–64 (9th Cir. 2015). In *Boitano*, the defendant had "handed" delinquent tax returns to an IRS enforcement agent, the IRS agent never sent the returns "to the IRS service center for processing," and, after the information in those returns was determined to be fraudulent, the defendant was charged with violating § 7206(1). *Id.* at 1161–62. Before the district court, the government argued that the defendant *had* filed the returns by handing them to the agent. *Id.* at 1162. But, on appeal, the government took the

48 SEAVIEW TRADING V. CIR

**2.**

Even if the Tax Code and regulations did not foreclose the majority's reliance on the "ordinary meaning" of "file" (which they do), and even if it were proper for us to devise our own filing regulation for delinquent returns (which it is not), and even if the majority's ordinary meaning definition were supported by legal authority (which it is not), the majority's ordinary meaning analysis would be problematic for another reason: the sweep of its implications.

The majority holds:

> that when (1) an IRS official authorized to obtain and receive delinquent returns informs a partnership that a tax return is missing and requests that tax return, (2) the partnership responds by giving the IRS official the tax return in the manner requested, and (3) the IRS official receives the tax return, the partnership has "filed" a tax return for § 6229(a) purposes.

---

position that "there is a single definition of filing that applies in both the civil and criminal context, and that the record does not support that the returns here were filed." *Id.* at 1163 (internal quotation marks omitted). The government repudiated its position in the district court that the returns were "filed" when handed to the agent. *Id.* Given the government's concession, we did not have to decide the correct meaning of "file" in *Boitano*. *Id.* at 1164. Nonetheless, we accepted the government's concession that handing a return to a revenue agent did not constitute a filing. The implication is that giving a return to someone other than the proper official, who in turn does not send "the returns to the IRS service center for processing," does not count as "filing" the return. *Id.* at 1161, 1163–64.

SEAVIEW TRADING V. CIR                    49

Maj. Op. 10–10.  The implication of the majority's reasoning is that this three-part test is just one of a broader set of valid ways to file delinquent returns.  To the majority, there are any number of places to file a delinquent return as long as it is "delivered to a proper IRS official and the official received the return."  Maj. Op. 15.  This holding is untethered from the statutory and regulatory text and does little to guide taxpayers, the IRS, and the Tax Court.  *See* Maj. Op. 10–10, 15–15.

To be sure, the majority appears to narrow its holding by limiting its application to instances where an IRS employee requests a delinquent return from a partnership[7] (which could conceivably happen in every case in which a partnership fails to file a return), and where the partnership sends the return to an IRS employee "authorized" to accept the returns.  Maj. Op. 10–10, 15–15, 19.  But the majority does not define "an authorized" employee, and instead improperly cites a non-precedential IRS internal memorandum to suggest that employees at certain pay grades may be authorized to process delinquent returns.  Maj. Op. 21 n.4 (citing IRS, National Office Advice No. 199933039 (June 25, 1999)).  The Tax Code explicitly provides that such internal memoranda "may not be used or

---

[7] Although the majority uses the term partnership, thereby seemingly limiting its holding to partnership returns governed by 26 U.S.C. § 6229 (2000), the majority does not explain why the sweeping rule it devises may or may not extend to individual tax returns governed by 26 U.S.C. § 6501's statute of limitations, which is similar in material respects to that of § 6229.  *Compare* 26 U.S.C. § 6501(a), (c), *with* 26 U.S.C. § 6229(a), (c) (2000).  Elsewhere the majority indicates that the analysis of individual and partnership returns is the same.  Maj. Op. 18 n.3.  Presumably the majority is reassured that this Pandora's box will be for taxpayers, the IRS, and the Tax Court to address in the first instance.

cited as precedent," 26 U.S.C. § 6110(k)(3), and, as the majority elsewhere acknowledges, such materials lack the force of law. *See Fargo*, 447 F.3d at 713; Maj. Op. 16. Nonetheless, the majority asserts that in this memorandum the IRS "held" that revenue officers at certain pay grades (GS-9, GS-11, and GS-12) may secure delinquent returns. Maj. Op. 21 n.4.

Even if we assume this memorandum applied in 2005 and 2007, and that it had any precedential value, it is irrelevant to the issues before us now. The memorandum provides guidance to IRS district counsel about procedures applicable to individuals filing returns by hand carrying them "to the District Director of the internal revenue district in which they live." IRS, National Office Advice No. 199933039, at 2–3 (June 25, 1999) (explaining that the Tax Code and regulations allow "a person other than a corporation" to file their return by hand carrying it to the district director, or by mailing it to the appropriate service center (first citing 26 U.S.C. § 6091(b)(1)(A), (b)(4); then citing 26 C.F.R. § 1.6091-2(a)(1), (c), (d)(1))).

The memorandum then states that neither the Tax Code nor the regulations "specifically provide for filing returns directly with revenue officers." *Id.* at 3. But it explains that delegations of authority (in that case, a delegation of the district director's authority to receive hand-carried returns) "may take many forms, including functional statements in position descriptions." *Id*. The memorandum reviews the position descriptions for revenue agents at pay scales GS-9, GS-11, and GS-12, and concludes that these descriptions are consistent with the revenue agents receiving hand-carried returns "as the revenue officers are acting on behalf of, and under the authority of, the District Director." *Id*.

Seaview nowhere argues that it hand-carried its return to the district director in the revenue district of its residence as an alternative, or in addition, to mailing its return to the appropriate service center, or that it attempted to do so. Thus, the majority's reliance on this internal memorandum is misplaced, and its supposed limitations are no limitation at all. Instead of following the clear weight of legal authority in this area, the majority creates a morass for courts to wade through as parties litigate whether an IRS employee was "authorized to obtain and receive" a return. Maj. Op. 10. And, of course, this holding will apply only in the Ninth Circuit, undermining the "equal and certain administration" of our nationwide tax system and "leading to uncertainty and obvious forum shopping opportunities." *Ai v. United States*, 809 F.3d 503, 507 (9th Cir. 2015) (internal quotation marks omitted).

\* \* \*

The statute and regulations leave no space for the majority to devise its own definition of "file" for delinquent returns. Even if there were such an opportunity, it is not our role to supply absent provisions or create exceptions not mandated by Congress. And even if we could turn to an ordinary meaning definition of "file," the definition provided by the majority is inconsistent with the authorities on which it relies and will create a host of problems for taxpayers, the IRS, and the Tax Court when dealing with tax returns in our circuit.

## C.

Logic and principles of statutory interpretation suffice to foreclose the majority's approach to § 6230(i) and § 1.6031(a)-1(e). But if there remains any doubt about the correctness of the majority's interpretation, the Supreme

52                    SEAVIEW TRADING V. CIR

Court's decision in *Badaracco* slams the door firmly shut. 464 U.S. 386. In *Badaracco*, the Court was asked to determine the applicability of 26 U.S.C. § 6501, which applies a three-year statute of limitations, like § 6229(a), unless the taxpayer fails to file a return or files "a false or fraudulent return with the intent to evade tax." *Id.* at 388. *Compare* 26 U.S.C. § 6501(a), (c), *with* 26 U.S.C. § 6229(a), (c) (2000). The issue in *Badaracco* was whether the three-year limitations period to assess taxes runs when the "taxpayer files a false or fraudulent return but later files a nonfraudulent amended return." 464 U.S. at 388. The Court rejected the taxpayer's argument and held that the IRS was permitted to assess "'at any time' the tax for a year in which the taxpayer has filed 'a false or fraudulent return,' despite any subsequent disclosure the taxpayer might make." *Id.* at 396.

In reaching that conclusion, the Court—unlike the majority here—rejected "a nonliteral construction of the statute based on considerations of policy and practicality." *Id.* at 396–401. Even more significantly, however, the Court reaffirmed that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Id.* at 391 (quoting *E.I. Dupont de Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)). This rule of statutory construction applies with particular force in the tax context: "[L]imitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Id.* at 392 (quoting *Lucia v. United States*, 474 F.2d 565, 570 (5th Cir. 1973)).

The majority hardly addresses this part of *Badaracco*'s holding, despite citing *Badaracco* later in its opinion for a different proposition. Maj. Op. 22 & [22] n.6. At the risk of

stating the obvious, we are bound by *Badaracco*. *See MK Hillside Partners v. Comm'r*, 826 F.3d 1200, 1206 (9th Cir. 2016) ("[W]e are bound not only by the holdings of [Supreme Court] decisions but also by their mode of analysis." (second alteration in original) (internal quotation marks omitted)); *see also Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Obviously, binding authority is very powerful medicine.  A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it.  Judges of the inferior courts may voice their criticisms, but follow it they must.").[8]

---

[8] The majority attempts to distinguish *Badaracco* in a footnote, Maj. Op. 22 n.6, but it is hard to read its treatment of this precedent as anything other than a departure from the Supreme Court's "mode of analysis." *MK Hillside Partners*, 826 F.3d at 1206.  It is true that *Badaracco* dealt with fraudulent returns under § 6501(c)(1), but the majority overlooks that the relevant provisions of §§ 6501 and 6229 are nearly identical, including in removing any statute of limitations when a fraudulent return is filed *or* when a taxpayer fails to file a return.  *Compare* 26 U.S.C. § 6501(c), *with* 26 U.S.C. § 6229(c) (2000).  The majority denies that *Badaracco*'s statement of what was then (and is now) well-settled authority that statutes of limitation must be strictly construed in favor of the government, particularly in the tax context, was in fact its "actual holding."  But we have recognized this holding of *Badaracco* many times. *See, e.g.*, *California ex rel. Cal. Dep't of Toxic Control v. Neville Chem. Co.*, 358 F.3d 661, 666 (9th Cir. 2004) ("[W]e have been specially instructed by the Supreme Court to construe limitations periods in favor of the government."); *Tosello v. United States*, 210 F.3d 1125, 1127 (9th Cir. 2000) ("[T]he applicable statute of limitations . . . must be construed strictly in favor of the government."); *In re West*, 5 F.3d 423, 426 (9th Cir. 1993) (observing this holding in the context of tax collection in bankruptcy); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1489 (9th Cir. 1993) ("[T]he court strictly construes the statute [of limitations] in favor of the government."); *FDIC v. Former Officers & Dirs. of Metro. Bank*, 884 F.2d 1304, 1309 (9th Cir. 1989) ("To the extent that a statute is ambiguous in assigning a limitations period for a claim, we will interpret it in a light most favorable to the government.").  The majority

If we follow *Badaracco*, as we are required to do, and strictly construe the statute of limitations in the government's favor, then it simply makes no sense to provide a different and more permissive tax filing regime for taxpayers who file their returns *late*. Ultimately, apart from a feeble attempt to distinguish *Badaracco*'s "actual" holding, Maj. Op. 22 n.6, the majority has no answer for how its idiosyncratic interpretation of the statute and regulations in this case can be reconciled with our obligation to "strictly construe[]" § 6229's limitation period "in favor of the government." *Badaracco*, 464 U.S. at 392. *See also Pac. Coast Steel Co. v. McLaughlin*, 61 F.2d 73, 75 (9th Cir. 1932) ("Statutes of limitation barring the collection of taxes that are justly due and unpaid must receive a strict construction in favor of the government, and limitation in such cases will not be presumed, in the absence of clear Congressional action."), *aff'd*, 288 U.S. 426 (1933); *Parrott v. McLaughlin*, 67 F.2d 397, 398–99 (9th Cir. 1933) (observing that, unlike statutes levying taxes, which are construed against the government, statutes of limitations "applied to bar rights of the government . . . must receive a strict construction in favor of the government").

Moreover, in cases considering similar issues, courts have uniformly failed to excuse delinquent returns from the filing requirements to which all taxpayers are subject. *See,*

---

later seems to recognize that *Badaracco* requires us to strictly construe § 6229's statute of limitations, but argues that does not mean "we must give the government carte blanche to apply § 6229 however and whenever it wants." Maj. Op. 22 n.6. The majority does not explain how faithfully applying the statute, regulations, and Supreme Court precedent amounts to allowing the government to apply the statute of limitations however and whenever it wants. The majority seems to think *we* have carte blanche to make our own rules that flagrantly contravene the statute, regulations, and Supreme Court authority. We do not.

*e.g.*, *Allnutt*, 523 F.3d at 407–10, 412–13 (applying the meticulous compliance standard to filing of delinquent returns); *Friedmann*, 82 T.C.M. (CCH) 381, at *2, 6–7 (same); *Green v. Comm'r*, 65 T.C.M. (CCH) 2347, at *7 (1993) ("[G]iving a *delinquent* return to an IRS agent does not constitute filing." (emphasis added)).  Tellingly, the majority does not cite any legal authority supporting its reasoning that § 6230(i) and § 1.6031(a)-1(e) by their terms do not apply to delinquent returns, nor does it reckon with the ample authorities that foreclose its interpretation.  *See* Maj. Op. 13.

## II.

With no support in the text of the Tax Code or IRS regulations for its desired outcome, the majority relies largely on internal IRS guidance which, the majority acknowledges, lacks the force of law and does not confer rights on taxpayers.[9]  *See Fargo*, 447 F.3d at 713; Maj. Op. 16.  Despite this frank and correct admission, the majority devotes a substantial portion of its opinion to analyzing this guidance.  Maj. Op. 16–19.  I would sooner adhere to the law.  *See Disabled Am. Veterans v. Comm'r*, 942 F.2d 309, 315 n.5 (6th Cir. 1991) (stating that IRS

---

[9] Specifically, the majority cites three documents: (1) IRS, Chief Counsel Advice No. 199933039 (June 25, 1999) (addressing whether a district director's authority to accept certain hand-carried returns can be delegated to revenue agents); (2) IRS Internal Revenue Manual, ch. 4.4 (2005) (listing procedures for processing delinquent returns and substitute for returns, including sending the return package "to the appropriate campus"); and (3) IRS Policy Statement 5-133 (2006) (stating that absent indications of fraud, "[a]ll delinquent returns submitted by a taxpayer, whether upon his/her own initiative or at the request of a Service representative, will be accepted," but containing no information about how or where such returns are accepted or processed). Maj. Op. 16–19.

counsel memoranda "are of no precedential value, and we are not prepared to rest a specific interpretation of a law passed by Congress on what may be nothing more than the general considerations of [IRS] employees"); *see also* 26 U.S.C. § 6110(k)(3) (providing that IRS internal memoranda "may not be used or cited as precedent").

But even if we were to accept that IRS internal guidance could affect the outcome in this case, the guidance would actually weigh *against* finding that Seaview's return was filed.  That is because, as the majority asserts, this guidance instructs IRS agents to send the delinquent return package to the appropriate service center for processing.**10**   Internal Revenue Manual 4.4.9.7.3 (2005); Maj. Op. 17.  In other words, the guidance itself is consistent with the well-established legal proposition that a return must be received at the appropriate service center to be considered filed.  In this case, of course, there is no evidence that the return ever was sent to the Ogden service center.

Therefore, at most, the IRS in this case did not comply with its own internal guidance.  The majority cites no legal authority whatsoever for the proposition that the IRS's failure to adhere to this guidance has any bearing on the merits of Seaview's appeal.  Instead, the majority's outcome rests on what it sees as the IRS's "troubling" inconsistency, concluding that "the IRS views the law one way as an internal matter and another way for litigation advantage," which the majority believes is a "nonsensical position" that is inconsistent with "common sense."  Maj. Op. 6–7, 16, 19.

---

**10** *See also* IRS, Chief Counsel Advice No. 199933039 (June 25, 1999) (stating that "whenever instructions applicable to income tax returns provide that the returns be filed with a service center, the returns must be so filed in accordance with the instructions").

In other words, as noted, the majority takes issue with the IRS's perceived unfairness to Seaview.

It should go without saying that our views of the equities of the parties' conduct in this case do not control the outcome. Instead, this court is guided by the decision of Congress to empower the Secretary of the Treasury to promulgate regulations with which taxpayers must comply to file their returns. 26 U.S.C. § 6230(i) (2000); *see Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.) ("We do not pause to consider whether a statute differently conceived and framed would yield results more consonant with fairness and reason. We take the statute as we find it."). To the extent that the majority thinks the operation of the Tax Code and regulations results in an unfair outcome, it is not within our purview to change the law to suit our own preferences. *Badaracco*, 464 U.S. at 398 ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement.").

We must also reject any suggestion that the government should be equitably estopped from asserting that Seaview did not file its 2001 partnership return and, thus, that the statute of limitations for assessing taxes did not apply. Granted, the majority does not explicitly argue that the government should be estopped from adjusting Seaview's return. But its objection to simply holding Seaview to compliance with the filing regulations—because IRS employees requested and received a copy of the return but did not forward it to the service center for processing— suggests that the majority is impliedly applying a form of estoppel. *See generally* Maj. Op. 6, 16–19.

"The traditional elements of an equitable estoppel claim include (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must

so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (internal quotation marks omitted). Seaview does not argue that it was aware of the IRS's internal guidance, much less that it relied upon these memoranda and manual sections. It thus cannot establish the traditional elements of estoppel.

Moreover, while "the Supreme Court has never categorically foreclosed estoppel against the government . . . , it has 'reversed every finding of estoppel that [it has] reviewed.'" *Indus. Customers of Nw. Utils. v. Bonneville Power*, 767 F.3d 912, 927 (9th Cir. 2014) (second alteration in original) (quoting *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422 (1990)). And even if estoppel applies to the government, a party claiming estoppel in this context must show, in addition to the traditional elements, that "(1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." *Baccei*, 632 F.3d at 1147.

Seaview cannot establish that the IRS engaged in affirmative misconduct. "Affirmative misconduct on the part of the government requires an affirmative misrepresentation or affirmative concealment of a material fact . . . ." *Id.* Seaview does not contend that the IRS misled it through misrepresentations or concealed material facts.

In any event, even the majority's characterization of the record in this case misses the mark. For the record evinces no intent on Seaview's part to file its returns as delinquent returns in 2005 or 2007. Instead, the record demonstrates

that in 2005, the IRS informed Seaview that it had "not received [its] federal income tax return(s)" for the 2001 tax year. Then, consistent with its position that the return *had* been filed in 2002, Seaview faxed the IRS "the 2001 tax return for Seaview Trading LLC as well as the certified mailing." Two years later, Seaview mailed "a copy of the Seaview Trading, LLC's retained copy of its 2001 Form 1065" to IRS counsel.

Of note, nothing in these communications suggests that Seaview wanted the IRS to treat the fax or mailing as a filing. Seaview did not inquire about what it should do to ensure that the return was treated as filed, nor did it ask that the IRS forward the return to the Ogden service center, even though it knew that was the correct location for filing. Instead, Seaview, a wealthy and sophisticated taxpayer advised by accountants and tax lawyers at a national law firm, consistently maintained that its return had been filed years earlier.

This strategy, had it succeeded, could have exonerated Seaview from any tax liability arising from the adjustment of the 2001 partnership return because the statute of limitations would have run before the IRS even informed Seaview that it had never received the return. Thus, Seaview's consistent position of a July 2002 filing, abandoned only years later after litigating this matter in the Tax Court, could have prevented any adjustment or penalties by the time the IRS requested information on the return in July 2005. *See* 26 U.S.C. § 6229(a) (2000). It should therefore come as no surprise that the record demonstrates no intention whatsoever that the 2005 and 2007 submissions be treated as filings. Seaview's position was that the statute of limitations had already run by that point. *Filing* the returns in 2005 or 2007 might have risked late-filing

penalties and starting the statute of limitations at that time, rather than in 2002.  *See* 26 C.F.R. § 1.6031(a)-1(a)(4) (2001).

The umbrage the majority seems to take with the IRS's position is therefore misplaced.  *See* Maj. Op. 6–7, 19. Assuming for the sake of argument that it is appropriate to consider questions regarding the parties' intent, *see, e.g.*, *Allnutt*, 523 F.3d at 413 n.5, the record does not support the notion that Seaview wanted to file its 2001 return in 2005 or 2007.  It thus makes no sense to fault the IRS for not taking any steps to treat the copies of Seaview's return as anything other than retained copies of previously filed returns.

This might be a different case if Seaview had requested the IRS to treat the submissions as filings—including as protective filings, which the government asserts would be a valid way to ensure the returns were filed in 2005 or 2007 while not abandoning the position that they had properly been filed in 2002.  And under Tax Court precedent, as discussed more fully below, *had* the return been forwarded to the Ogden service center and processed there, then the statute of limitations would have run from that date.  *Winnett v. Comm'r*, 96 T.C. 802, 807–08 (1991).  But these facts are not present here.[11]

---

[11] Seaview disputes that it could have submitted a "protective filing," arguing that such a filing "appears to be something the IRS invented just for this case."  But in other contexts, the IRS has recognized "protective claims" as a way to preserve a taxpayer's right to a tax refund "when the taxpayer's right to the refund is contingent on future events and may not be determinable until after the statute of limitations expires."  Office of Chief Counsel, IRS, *Memorandum: Protective Claims*, at 3 (Aug. 5, 2005) (collecting cases).  The record also reflects that Seaview's tax matters partner, AGK Investments, LLC, filed two

Fundamentally, however, such considerations do not control the outcome of this case. This matter is instead controlled by the Tax Code and IRS regulations, as discussed above, and binding and persuasive case law, which I address next.

## III.

A more in-depth review of the case law in this area further demonstrates the many flaws in the majority's approach. But before looking to the legion of on-point cases regarding filing requirements and the statute of limitations, it is worth considering how we are required to approach these precedents.

## A.

To begin with, we have long recognized that, although our review of Tax Court decisions is de novo, we "generally defer[]" to Tax Court decisions, "and will not disagree with that court unless an unmistakable question of law so mandates." *First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1345 (9th Cir. 1982); *see also Gragg v. United States*, 831 F.3d 1189, 1192 (9th Cir. 2016) (recognizing that even though Tax Court opinions are merely persuasive authority, the "Tax Court is informed by experience and kept current with tax evolution and needs by the volume and variety of its work," and "uniform administration would be promoted by conforming to [its decisions] when possible" (alteration in original) (quoting *Dobson v. Comm'r*, 320 U.S. 489, 502 (1943))); *Vukasovich, Inc. v. Comm'r*, 790 F.2d 1409, 1413 (9th Cir. 1986) ("Tax

---

distinct "protective petition[s]" when this case was litigated in the Tax Court.

Court decisions should receive deference in the interest of a uniform body of national tax law.  This is especially so when '*it is more important that the applicable rule of law be settled than that it be settled right*.'" (emphasis added) (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting))).

Furthermore, "[a]bsent a strong reason to do so, we will not create a direct conflict with other circuits." *United States v. Cuevas-Lopez*, 934 F.3d 1056, 1067 (9th Cir. 2019) (internal quotation marks omitted).   This rule is even stronger in the tax context:  "Uniformity among the circuits is especially important in tax cases to ensure equal and certain administration of the tax system.  We would therefore hesitate to reject the view of another circuit." *First Charter Fin. Corp.*, 669 F.2d at 1345; *see also Ai*, 809 F.3d at 507 ("We have recognized . . . that [u]niformity among Circuits is especially important in tax cases to ensure equal and certain administration of the tax system.  That is particularly true where, as here, a circuit split would create two mutually exclusive rules . . . leading to uncertainty and obvious forum shopping opportunities." (second alteration in original) (internal quotation marks omitted)).

Keeping these principles in mind when examining the case law in this area will further demonstrate that, whatever the merits of the majority's novel statutory interpretation in this case, its holding cannot stand.  For the majority ignores or erroneously brushes aside Supreme Court and Tax Court precedent.  It also needlessly creates a circuit split even though the proper method of filing taxes is of nationwide concern and self-evidently is a topic on which "it is more important that the applicable rule of law be settled than that it be settled right." *Vukasovich*, 790 F.2d at 1413 (internal

quotation marks omitted). These considerations alone are enough to render the majority opinion erroneous.

**B.**

**1.**

Starting with Supreme Court precedent, we are bound to apply the rule that Seaview must show "meticulous compliance" with filing requirements to benefit from the statute of limitations. *Lucas*, 281 U.S. at 249; *see also Comm'r v. Lane-Wells Co.*, 321 U.S. 219, 223 (1944) ("Congress has given discretion to the Commissioner to prescribe by regulation forms of returns and has made it the duty of the of the taxpayer to comply."); *Bachner v. Comm'r*, 81 F.3d 1274, 1280 (3d Cir. 1996) ("The Supreme Court repeatedly has declared that tax returns must comply strictly with prescribed requirements in order to trigger applicable limitations periods.").

As already discussed at length, the majority seeks to avoid this rule by concluding that the filing of delinquent returns is ungoverned by existing law. Even if that were true (which it is not), the majority fails to explain how its relaxed filing requirements—for taxpayers who pay their taxes *late*—is consistent with the binding rule that a taxpayer *must* demonstrate "meticulous compliance" to benefit from the statute of limitations. *Lucas*, 281 U.S. at 249. Rather than upholding the need for meticulous compliance, the majority's holding encourages *delinquency*—*i.e.*, the opposite of meticulous compliance—by making it easier for delinquent taxpayers to secure the statute of limitations. The law does not ordinarily reward delinquency. Even less should it do so here, when the Supreme Court has advised us that taxpayers must demonstrate *meticulous* compliance with IRS regulations to benefit from the limitations period.

*Id.* Instead of applying that well-established authority, the majority invents an anti-meticulous-compliance rule.

We also must apply the Supreme Court's holding that that § 6229's statute of limitations is to receive "a strict construction in favor of the Government." *Badaracco*, 464 U.S. at 391. Here, the majority barely grapples with how its interpretation of the Tax Code and IRS regulations in this case can possibly be read as a strict construction in favor of the government. *See* Maj. Op. 22 n.6. In fact, the majority opinion adopts a *loose* construction *disfavoring* the government.

## 2.

A long line of cases from our sister circuits holds that if a taxpayer cannot show that he meticulously complied with the filing requirements—including, for example, when the taxpayer submits his return to the wrong office or individual—the statute of limitations does not run and the IRS may assess the return at any time. *Coffey*, 987 F.3d at 812–13; *Comm'r v. Estate of Sanders*, 834 F.3d 1269, 1274–75 (11th Cir. 2016); *Allnutt*, 523 F.3d at 411–14; *O'Bryan Bros. v. Comm'r*, 127 F.2d 645, 647 (6th Cir. 1942); *W.H. Hill Co. v. Comm'r*, 64 F.2d 506, 507–08 (6th Cir. 1933); *see also Friedmann*, 82 T.C.M. (CCH) 381, at *7, *aff'd*, 80 F. App'x 285 (3d Cir. 2003); *Green*, 65 T.C.M. (CCH) 2347, at *7, *aff'd*, 33 F.3d 1378 (5th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 1059 (1994).

Contrary to our court's precedent, the majority does not "hesitate" to disagree with our sister circuits, but casually brushes aside in a single paragraph every one of them to have considered the issue before us. *See First Charter Fin. Corp.*, 669 F.2d at 1345; Maj. Op. 20. As a close look at a sampling of these cases will demonstrate, our sister circuits have

considered analogous issues, and have reached conclusions that stand in stark contrast with the majority's result.

In *Allnutt v. Commissioner*, the Fourth Circuit held that the taxpayer did not meticulously comply with the filing regulations, and the statute of limitations did not begin to run, when the taxpayer submitted delinquent tax returns at the wrong location. 523 F.3d at 407–10.  Allnutt signed his tax returns (which were delinquent, covering 1981–1995), and hand-delivered them to the Baltimore District Counsel's office on February 21, 1997, intending that such delivery to the IRS counsel would constitute the filing of the returns. *Id.* at 408–09.  These returns were later marked as received in March 1997, but "were never further processed by the IRS." *Id.* at 409.  Also on February 21, 1997, Allnutt attempted to hand-deliver photocopied returns to a different person at the Baltimore District Director's office who claimed to have authority to take the return. *Id.*  The returns eventually were routed to the correct IRS service center and received there in May or June 1997. *Id.* at 409–10.  The IRS issued a notice of deficiency in March 2000, which would be untimely if Allnutt's returns were filed when he delivered them, in February 1997, but timely if the returns were filed when they were received at the correct location in May or June 1997. *Id.* at 408, 411.

In *Allnutt*, the court began its analysis by articulating the well-established principles that statutes of limitations are construed strictly in favor of the government, and that taxpayers must meticulously comply with the relevant statutes and regulations to obtain the benefit of the limitations period. *Id.* at 412.  The court then explained that "for returns to be considered 'filed' for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the *specific* individual

66                    SEAVIEW TRADING V. CIR

or individuals identified in the Code or Regulations." *Id.* at 413. "Compliance with this requirement is vital so as to apprise the proper tax official . . . of the liability of taxpayers for the federal income tax imposed upon them." *Id.* (alteration in original) (internal quotation marks omitted).

The Fourth Circuit then concluded that Allnutt could not demonstrate meticulous compliance because he did not hand-deliver his returns to the correct individual—which would have been either the Baltimore District Director or an "administrative supervisor." *Id.* In other words, it was not enough that Allnutt hand-delivered original returns to the IRS Counsel's office in Baltimore, or that he dropped off courtesy copies of the returns with an individual who stated he had authority to accept packages on the Baltimore District Director's behalf. *See id.*

In *Coffey v. Commissioner*, the Eighth Circuit considered whether a married couple had filed their tax return and therefore could invoke the three-year statute of limitations. *See* 987 F.3d at 810–11. The Coffeys filed their return with U.S. Virgin Islands authorities on the belief that one of the Coffeys was a "bona fide" Virgin Islands resident. *Id.* Bona fide Virgin Islands residents are required to file only with the Virgin Islands, while any other taxpayer with Virgin Islands income must file a return with both the United States and the Virgin Islands. *Id.* at 811. The Coffeys filed their returns with the Virgin Islands and not with the IRS, but Virgin Islands authorities sent portions of the Coffeys' returns to the IRS, leading to an IRS audit, and eventually to notices of deficiency issued more than three years after the IRS received the documents. *Id.* The Coffeys argued the assessment was barred by the statute of limitations. *Id.* The Eighth Circuit disagreed, concluding that the statute of

limitations never began to run because the Coffeys never filed a return.  *Id.* at 811–13.

In *Coffey,* the court began with the principle that a taxpayer must meticulously comply with all filing requirements in the Code and IRS regulations and concluded that returns "are 'filed' if 'delivered, in the appropriate form, to the specified individual or individuals identified in the Code or Regulations.'"  *Id.* at 812 (quoting *Estate of Sanders*, 834 F.3d at 1274).  The Eighth Circuit clarified that "the IRS's actual knowledge of the income" does not begin the limitations period.  *Id.* at 813.  Rather, it is only when the taxpayer *files* the return that the period commences, even when the IRS receives the relevant information before a filing occurs.  *Id.*  It did not matter that the IRS received copies of the documents themselves:  "That the IRS actually received the documents, processed and audited them, and issued deficiency notices is irrelevant for statute of limitations purposes."  *Id.*

Other circuits have uniformly reached the same conclusion as the Fourth Circuit in *Allnutt* and the Eighth Circuit in *Coffey*.  *See Estate of Sanders*, 834 F.3d at 1274 (Eleventh Circuit holding that "a return does not trigger the running of the statute of limitations unless it is filed in the place required by the statute or regulations"); *O'Bryan Bros.*, 127 F.2d at 647 (Sixth Circuit holding that statute of limitations did not run until correct IRS official received the return because it was the taxpayer's duty "to file the return with the collector of the district" and "[i]t was not the duty of the internal revenue agent in charge to file a return for the taxpayer"); *W.H. Hill Co.*, 64 F.2d at 507–08 (Sixth Circuit holding that statute of limitations did not run when a return was submitted to the Commissioner because the statute "required that returns be filed with the collector"); *see also*

*Friedmann*, 82 T.C.M. (CCH) 381, at *7 (holding that there was no filing when the taxpayer "gave photocopies of his 1989 and 1990 returns to [the IRS's] revenue agent" because "[c]learly, the revenue agent was not the prescribed place for filing those returns"), *aff'd*, 80 F. App'x 285 (3d Cir. 2003); *Green*, 65 T.C.M. (CCH) 2347, at *7 ("[G]iving a delinquent return to an IRS agent does not constitute filing."), *aff'd*, 33 F.3d 1378 (5th Cir. 1994) (per curiam), *cert. denied*, 513 U.S. 1059 (1994).

The majority does not cite a single case from our sister circuits supporting its position. It does, however, attempt to distinguish this line of cases. The majority states that none of these cases "involve the facts here—when an IRS revenue agent authorized to obtain delinquent returns requested and received the return from a taxpayer." Maj. Op. 20. But the majority does not explain why, under the Tax Code, regulations, case law, other legal authority, or for any other reason, it is significant in this context that an IRS revenue agent "requested" the return. Maj. Op. 20. Nor does the majority explain what is meant by a revenue agent "authorized to obtain delinquent returns." Maj. Op. 20. In all the cases from our sister circuits, there is no hint that the persons who received the taxpayer's return were unauthorized to *obtain* them; the question was whether the persons who received the returns were empowered to process them, *i.e.*, whether the taxpayer submitted the return to the right person or the right place. *See, e.g.*, *O'Bryan Bros.*, 127 F.2d at 647. Like much of the majority's opinion, the requirement that the person receiving the return be authorized to "obtain" it has murky origins. This "obtain" requirement is nowhere to be found in the case law or (perhaps it goes without saying at this point) the Tax Code or IRS regulations. Maj. Op. 10, 15, 20, 21 n.4.

This approach also directly conflicts with our sister circuits, which have emphasized that just because *someone* at the IRS gets the return does not mean that the statute of limitations begins to run, because to trigger the statute of limitations the return must be filed at the correct location or with the correct official. *See, e.g.*, *O'Bryan Bros.*, 127 F.2d at 647. This is true even when, as here, the IRS relies on the materials it receives from the taxpayer to seek adjustments or penalties. *See Coffey*, 987 F.3d at 813.

The majority's holding also directly conflicts with our sister circuits in other ways. Because the majority's conclusion that the Tax Code and regulations do not govern delinquent returns is the keystone of its holding, there is a direct conflict between the majority's opinion and *Allnutt*, in which the Fourth Circuit sensibly held that the meticulous compliance requirement applied to delinquent returns. 523 F.3d at 407.

Furthermore, courts have rejected the notion that a taxpayer's good faith belief that he has submitted his return to the correct location can excuse meticulous compliance. *See Estate of Sanders*, 834 F.3d at 1275 (holding that "a taxpayer's mere good faith belief" regarding the correctness of his filing "is insufficient to cause a return filed with [the wrong office] to start the statute of limitations period"); *Allnutt*, 523 F.3d at 414 (opining that although it was "not wholly unsympathetic to Allnutt's plight," a proper application of the meticulous compliance standard required finding that the government was not "barred from assessing and collecting Allnutt's considerable tax deficiencies"). Thus, even assuming that the revenue agent's request in this case gave rise to Seaview's good faith belief that it was filing its return in fulfilling the request (which the record does not actually support), the case law strongly suggests that such a

belief would not be a ground to depart from the statute or precedent here.  As the Eleventh Circuit concluded in *Estate of Sanders*, it would not be appropriate to allow a good-faith exception unless Congress created one in the statute. 834 F.3d at 1276–79.

At a minimum, the majority has not provided a "strong reason" to create these direct conflicts with other circuits. *Cuevas-Lopez*, 934 F.3d at 1067; *see First Charter Fin. Corp.*, 669 F.2d at 1345.

**3.**

The Tax Court has also reached the same result each time it has been asked to address this issue:  When a taxpayer does not submit its return to the right official or the right location, it has not "filed" the return, unless and until the return reaches the correct location and is processed there.  *See, e.g.*, *Smyth*, 113 T.C.M. (CCH) 1132, at *3; *Friedmann*, 82 T.C.M. (CCH) 381, at *7; *Green*, 65 T.C.M. (CCH) 2347, at *7; *Turco v. Comm'r*, 74 T.C.M. (CCH) 1437, at *2 (1997); *Metals Refin. Ltd. v. Comm'r*, 65 T.C.M. (CCH) 2171, at *6–7, 10 (1993); *Winnett*, 96 T.C. at 807–08; *Espinoza v. Comm'r*, 78 T.C. 412, 413, 422 (1982). Therefore, I agree with the majority that "several Tax Court cases support the IRS's view in this litigation." Maj. Op. 20. But this synopsis puts it rather mildly.  In fact, there are, as the Tax Court noted below, "a plethora" of cases supporting the conclusion that Seaview did not file its return when it sent copies to an IRS agent and IRS counsel.  Although the Tax Court's decisions are not binding upon us, the majority's casual treatment of this body of law violates our precedent, which requires us to give such decisions respectful consideration.  *Gragg*, 831 F.3d at 1192; *Vukasovich*, 790 F.2d at 1413.  Furthermore, we are not tax experts.  It is

therefore unwise as well as contrary to law to ignore the Tax Court's precedents.

**i.**

Specifically, the Tax Court has repeatedly held that the meticulous compliance standard applies with full force to delinquent returns. *Friedmann*, 82 T.C.M. (CCH) 381, at *2, 6–7 ("[W]e find that there was no filing of the subject returns . . . when petitioner gave photocopies of his [delinquent] returns to [the IRS's] revenue agent. Clearly the revenue agent was not the prescribed place for filing those returns . . . ."); *Green*, 65 T.C.M. (CCH) 2347, at *7 ("[G]iving a delinquent return to an IRS agent does not constitute filing.").

The Tax Court has also repeatedly held that submitting a return to an IRS agent is not a proper filing and does not trigger the limitations period. *Friedmann*, 82 T.C.M. (CCH) 381, at *7; *Turco*, 74 T.C.M. (CCH) 1437, at *2 (holding that photocopied returns delivered to IRS agent were not filed because they were not "filed in the appropriate office" and to conclude otherwise would be "to ignore the . . . place of filing requirements"); *Green*, 65 T.C.M. (CCH) 2347, at *7; *Metals Refin.*, 65 T.C.M. (CCH) 2171, at *6–7 (holding that the delivery of partnership returns to IRS agents did not comply with partnership return filing requirements); *Espinoza*, 78 T.C. at 422 ("It was not the responsibility of the revenue agent to transmit [the taxpayer's amended] returns for filing . . . ."). Likewise,

submitting a return to IRS counsel is not a proper filing. *Smyth*, 113 T.C.M. (CCH) 1132, at *3.**[12]**

Moreover, even if the IRS receives the documents and relies upon them to adjust taxes or assess penalties, the Tax Court has determined that such reliance does not trigger the statute of limitations. *Friedmann*, 82 T.C.M. (CCH) 381, at *6 (holding that the IRS's notice of deficiency issued more than three years after copies sent to IRS agent was timely because the returns were never filed); *Turco*, 74 T.C.M. (CCH) 1437, at *1–2 (holding photocopies of returns were not filed even though the IRS agent "used the photocopied returns as the basis for his audit"); *Metals Refin.*, 65 T.C.M. (CCH) 2171, at *6–7 ("Even if the IRS agents received properly executed returns, delivery to such agents does not necessarily constitute proper filing.").

This result is hardly surprising. To assess a partnership's taxes under § 6229(c)(3), the IRS would presumably have to rely on materials conveying information about the partnership's tax liability, such as an unfiled return. *See* 26 U.S.C. § 6229(c)(3) (2000). Were the IRS unable to do so without converting such a document into a filed return, § 6229(c)(3) would be a dead letter. *See Ariz. State Bd. for Charter Schs.*, 464 F.3d at 1007 (observing that in interpreting a statute it is for this court to "ascertain—neither to add nor subtract, neither to delete nor to distort" the text).

The Tax Court has also repeatedly held that when a return is submitted to the wrong location, it is not deemed filed for statute of limitations purposes until it is received at

---

**[12]** The majority does not reach whether Seaview filed its return when it submitted copies of the return to IRS counsel in 2007. Maj. Op. 21 n.5.

the location "designated to receive such return." *Winnett*, 96 T.C. at 808; *see also Dingman v. Comm'r*, 101 T.C.M. (CCH) 1562, at *12–13 (2011) (holding that a delinquent return submitted to the wrong location was filed when "an IRS office with authority to receive and process the contents of the package" received the package, as evidenced by the date that the checks submitted with the returns were processed). Therefore, even overlooking that Seaview never filed its return to the right place, the return was also never "filed" because—as the parties do not dispute—Seaview cannot show that its return ever reached the Ogden service center, the correct location for receipt and processing of its return.

**ii.**

After disregarding this entire body of law, the majority focuses on the lone Tax Court opinion that it concludes supports its reading of the Tax Code and regulations, *Dingman v. Commissioner*, 101 T.C.M. (CCH) 1562. Maj. Op. 20. But a closer read of *Dingman* shows that the majority's reliance on this case is misplaced.

In *Dingman*, the taxpayer did not timely file his 1996–2000 federal income tax returns and became the subject of an IRS criminal investigation. *Id.* at *1. At some point during Dingman's cooperation with the investigation, his counsel delivered a package containing the delinquent returns—and checks to pay the outstanding tax liability—to the IRS investigators. *Id.* The first of Dingman's payments was posted on February 19, 2003, indicating that the IRS had received and processed his returns by that date at the latest. *Id.* at *1–4, 6. More than three years later, on February 28, 2006, the IRS sought to assess additional taxes. *Id.* at *2, 6. The question was whether this assessment was untimely. *Id.* at *5.

The government argued, in line with the authorities outlined above, that Dingman's 2003 submission was not a filing for statute of limitations purposes because the returns were delivered to the wrong IRS representative. *Id.* at *7. But an unusual administrative development derailed this argument. *Id.* at *7–8.

In 2003, the IRS had recently restructured itself such that earlier regulations about the correct filing location had been "rendered obsolete," but, "in 2003 regulations under section 6091 continued to refer to officials whose positions had been eliminated and to offices that had been eliminated as a result of the reorganization, leaving taxpayers with little or no effective regulatory guidance." *Id.* at *8. The IRS sought to rectify this situation by issuing a notice in early 2003 providing instructions on correct filing locations under the new regime, but this document did not become effective until April 7, 2003—after Dingman had delivered his delinquent returns, and checks for the tax liability, to investigators. *Id.* at *8–9. The IRS did not update the regulations to reflect the reorganization until September 2004. *Id.* at *8. Consequently, there was an unusual lack of guidance for taxpayers filing in the period that Dingman submitted his returns. *Id.* at *9.

In this vacuum, the Tax Court found it significant that the record showed that Dingman delivered a package of tax returns no later than February 19, 2003 (the date the first of Dingman's payments was processed), and that this package was *received*, by that date, at "an IRS office that had the authority to process its contents." *Id.* The government argued that this did not matter because the IRS investigators were not the proper recipients of the returns, and therefore Dingman "failed to meticulously comply with the filing requirements." *Id.* at *10.

The Tax Court distinguished the authorities tending to support the government's position by noting, among other things, that (1) Dingman's filing did not contradict specific, applicable IRS statutes or regulations (because of the lack of applicable regulations in early 2003); (2) none of the cases on which the government relied "involved an attempt by the taxpayer to file executed original returns with payments"; and (3) "none of the cases involved evidence that the payments made with the returns were actually processed by the IRS and credited to the taxpayer's account." *Id.* at *11. Further, the court explained that, in light of the uncertain regulatory environment in early 2003, the government's argument that IRS investigators lacked authority to accept returns was unavailing because the government failed to prove that investigators lacked such authority at that time. *Id.*

Finally, the Tax Court reasoned that, even if the taxpayer submits a return to someone who is not authorized to accept it for filing, if the return is then forwarded to the correct IRS office, the limitations period commences from the time the designated office actually receives it. *Id.* at *12 (first citing *Winnett*, 96 T.C. at 808; then *Allnutt v. Comm'r*, 84 T.C.M. (CCH) 669 (2002)). The record demonstrated that the IRS received the returns for processing by no later than February 19, 2003—rendering the IRS's later assessment untimely. *Id.* at *12–13.

*Dingman*, properly applied to the facts here, does not support the majority's result. First, there are crucial factual differences between *Dingman* and this case. The first and most blatant is that in *Dingman* there were no applicable regulations informing the taxpayer where to file his returns. *See id.* at *8; Michael Saltzman & Leslie Book, *IRS Practice and Procedure* ¶¶ 5.02[2] & n.44, 5.03[1][b] & n.130 (Feb.

2022) (noting that that the Tax Court concluded the returns were filed "because the relevant Treasury Regulations had not been revised to replace obsolete offices in the Service"). Although the Tax Court in *Dingman* recognized the "meticulous compliance" standard, *see* 101 T.C.M. (CCH) 1562, at *7, there were no regulations with which to meticulously comply. Here, the majority agrees that Seaview was subject to § 6230(i) and § 1.6031(a)-1(e). Maj. Op. 13. This distinction alone is enough to render the reasoning of *Dingman* inapplicable.

The second crucial distinction is that Dingman submitted checks along with the five delinquent returns and, by February 19, 2003, the IRS had actually received and processed those checks, which demonstrated that by that date at the latest someone with authority to process the returns had received them. *Id.* at *12–13. Neither Seaview nor the majority point to any date at which it can be shown that the Ogden service center, or some other IRS office with requisite authority, received and processed Seaview's return.

This fact, in turn, played a pivotal role in the Tax Court's holding in *Dingman*, which was that the returns were filed no later than February 19, 2003, when the IRS deposited the money from Dingman's checks, *not* that the filing occurred on the date the returns were delivered to the IRS investigator—sometime between late 2002 and mid-February 2003. *See id.* at *1, 12–13. Thus, consistent with established Tax Court precedent, the court did *not* conclude that the filing occurred when the delinquent returns were delivered to the someone at the IRS, but rather when the returns were received at the correct location and processed. *Id.* at *12–13 (citing *Winnett*, 96 T.C. at 808).

Given these important considerations, it is absurd for the majority to state that the facts of *Dingman* "closely mirror

this case." Maj. Op. 21. And this is without even addressing other relevant distinctions, including that in *Dingman* the taxpayer's counsel hand-delivered the returns to IRS investigators in the context of a criminal investigation. *Id.* at *1. *See* Hertsel Shadian, 14A *Mertens Law of Federal Income Taxation* § 55:8 n.3 (Feb. 2022) ("*Dingman* is applicable only to hand-delivery of returns arising under the facts present in that case, i.e., the taxpayer clearly intended that the returns submitted to the [IRS investigator] be delinquent returns with payments, and the Service processed them as such and assessed the taxpayer's payments.").

Finally, *Dingman* is decidedly an outlier. *See* Shadian, *supra*, at § 55:8 n.3; Saltzman & Book, *supra* at ¶ 5.03[1][b] n.130. Even if we could somehow twist the facts of this case to fit the unusual circumstances present in *Dingman*, such a project would be dubious in light of the overwhelming Supreme Court, Tax Court, and out-of-circuit authority pointing in the other direction.

## IV.

For all these reasons, the majority opinion should not be the holding of this court. The majority misconstrues the statutes and regulations, improperly fashions its own delinquent-return filing regime, is wrongly predicated on nonbinding internal IRS guidance, incorrectly applies a form of implicit equitable estoppel, misreads the record, and—contrary to basic rules of our jurisprudence—disregards Supreme Court, out-of-circuit, and Tax Court authority.

Rather than following this dubious approach, I would adhere to "the theory of justice that requires a judge to follow

78                    SEAVIEW TRADING V. CIR

the law as it is." *Smyth*, 113 T.C.M. (CCH) 1132, at *4. I respectfully dissent.[13]

---

[13] Because Seaview's failure to file its 2001 return is dispositive of the issues on this appeal, I do not reach the majority's conclusions about whether the copies Seaview shared in 2005 and 2007 are "returns." Maj. Op. 22–25.

Case 20-72446, 05/11/2022, ID 12443630, DktEntry 65-72, Page 110 of 114

TAXES

# 7 Million Taxpayers Fail To File Their Income Taxes

**Robert E. McKenzie** Contributor
**IRS Watch** Contributor Group ⓘ

Aug 27, 2014, 02:37am EDT

🕐 **This article is more than 7 years old.**

About 7 million U. S. Taxpayers fail to file required income tax returns each year, while 146 million Americans dutifully file their returns each year. That means that about 5% of the populace fail to meet their obligations to Uncle Sam. As part of its National Research Program the IRS released a study in 2011 of 2006 returns which found that as result of non-filing, the government loses $28 billion per year. Although the IRS makes efforts to force non-filers into compliance, the continuing improvident cutting of the IRS budget allows more taxpayers to duck their filing obligations because the IRS has fewer resources to pursue non-compliant taxpayers.

As a tax controversy lawyer I frequently meet with taxpayers who have failed to file multiple years of returns. Many of those clients ask, "Should I file the return right now, or wait until I have the money to pay it?" The answer is simple: file it as soon as possible!

If the taxpayer has any money at all available for payment, it should be enclosed with the return. The reason for such advice is that one of the largest penalty rates which the IRS may impose is for late

Seaview Trading LLC v. Commissioner of Internal Revenue cited in No. 20-72416 archived on May 5, 2022

Cookie Preferences

filing of a return. The penalty is five percent per month, up to a maximum of 25%, of the tax due but unpaid by the due date of the return.  This works out to an annualized rate of 60%. Therefore, if one fails to file their return on time, the effective annual rate is over 75% when both interest and late filing and late payment penalties are considered.  The late payment penalty after notice of intent to levy is one percent per month, or an effective rate of 12% per year in addition to statutory interest. In addition to the above considerations a taxpayer might also forfeit refunds due from delinquent returns since any return filed more than 3 years after its due date cannot receive a refund.

One drawback of filing a timely return without remittance is that the IRS will arrive at the taxpayer's door to collect the liability much sooner than if he or she files a return late. However, the additional cost for penalties incurred to gain this time is prohibitive.

## Criminal Prosecution

An additional consideration in advising the taxpayer to file returns, even if he or she does not have money to pay the balance of tax due, is the potential criminal penalties for failure to file a tax return. Therefore, if your client should fail to file a return, and if the Internal Revenue Service should decide that such action constituted willful failure to file, your client might be required to defend against a federal criminal charge.

The chances of prosecution for non-filing are small, but certain groups are targeted by the IRS. Politicians, tax protesters, drug dealers, organized crime figures and high income professionals are prime targets for IRS prosecution. The IRS uses prosecution for its deterrent effect on the general public, and these groups get larger

Cookie Preferences

Crabb Seaview Trading, LLC v. Commissioner of Internal Revenue No. 20-72416, archived on May 5, 2022

5/5/22, 2:24 PM

(81 of 87)

Case 2:07-cv-21446,05/1/2022 - 7 Million Taxpayers Fail to File their Income Taxes ID 12245330 DktEntry 65-73 Page 23 of 14

headlines than the average guy on the street. Congress has allocated additional funds to the IRS to pursue drug dealers.

## Non-Filers Criminal Enforcement

|  | FY 2013 | FY 2012 | FY 2011 |
|---|---|---|---|
| **Investigations Initiated** | 279 | 320 | 365 |
| **Prosecution Recommendations** | 223 | 225 | 246 |
| **Indictments/Informations** | 211 | 240 | 266 |
| **Sentenced** | 233 | 217 | 231 |
| **Incarceration Rate*** | 85.8% | 89.4% | 83.5% |
| **Average Months to Serve** | 48 | 45 | 33 |

## IRS preparation of returns

If a taxpayer has not filed, the IRS has authority to prepare a return on his or her behalf. [I.R.C. § 6020(b)] Obviously, the IRS will estimate the tax to its benefit, not that of the taxpayer. The assessment can later be abated if the taxpayer files the delinquent return. However, the author has found that the IRS does not readily abate 1040 liabilities prepared on the taxpayer's behalf.

## IRS preparation of 1040s by computer

The IRS prepares 1040's for non-filers by inputting information returns into its computers and generating a substitute for return (SFR) based upon information received from third parties. The taxpayer is not given credit for expenses, deductions, or other tax benefits. This procedure has resulted in many grossly erroneous assessments. Some are based upon information returns which contain erroneous taxpayer ID numbers. Since the IRS database contains many errors, it is not unusual for notices of proposed

cited in Seaview Trading, LLC v. Commissioner of Internal Revenue No. 20-72416 archived on May 5, 2022

Cookie Preferences

assessments to be mailed to incorrect addresses. The author has found that the Taxpayer Advocate Service has been an effective way to resolve incorrect assessments generated by this process.

Most investigations of non-filing are initiated because of computer matches. The IRS uses both a "Stop-filer Program" and a "Non-filer Program" to discover return delinquencies. If a taxpayer has filed tax returns in the past and then a return is not filed with the IRS for the next tax period, that taxpayer is identified as a "stop-filer" by the IRS. If the IRS receives information documents such as W-2s and 1099s which cannot be matched with a return, that taxpayer is identified as a "Non-Filer."

## Time of delinquency checks

Normally the IRS will initiate a delinquency check about 15 months after a 1040 is due from a Non-Filer or nine months after the due date for stop-filers. For employment tax returns, a delinquency check is begun eight to nine weeks after the due date of the return.

## Information resources

If a taxpayer retains a tax practitioner to prepare the delinquent returns, the practitioner may request information return data from the IRS.  W-2 and 1099 information are stored in the IRS computer system in a database known as the "Information Returns Program" (IRP).  Upon request by a tax practitioner with a valid power of attorney, the IRS will provide all of its IRP data to allow preparation of a more accurate delinquent return.

Because of budget cuts passed by our dysfunctional Congress, the IRS has greatly reduced its SFR program. The Taxpayer Advocate reported in 2013 the number of returns generated by the IRS's Automated Substitute for Return (ASFR) program fell by half in

Preview Trading, Inc. v. Commissioner of Internal Revenue, cited in case Docket No. 20-72416 archived on May 5, 2022.

Cookie Preferences

fiscal 2012, and tax assessments under the program decreased by 54%. As Mark Twain said: "What if you were a fool and what if you were also a member of Congress, but I repeat myself."

 **Robert E. McKenzie**

Robert E. McKenzie of the law firm of Arnstein & Lehr LLP of Chicago, Illinois, concentrates his practice in… **Read More**

Editorial Standards                                  Reprints & Permissions

ADVERTISEMENT

cited in Seaview Trading, LLC v. Commissioner of Internal Revenue
No. 20-72416 archived on May 5, 2022

Cookie Preferences